# John F. Cox *vs.* Clement Hill and Samuel Sprigg and wife.

A mother for natural love and affection assigned by a writing *not under seal* a single bill to her daughter, reserving the interest to herself during her life, but there was no delivery of the bill to the daughter nor to any one as trustee for her, and no proof that the mother ever became such trustee,, nor did the obligor, though he had notice of the assignment, ever consent to be such trustee, but paid the bill when due by another obligation, which the mother subsequently assigned and delivered to another daughter. Held:

That the first assignment was a purely voluntary gift, incomplete in itself for, want of delivery to the daughter or to some one for her, which a court of equity will not interfere to give vitality to, and the mother had the right to make the subsequent assignment.

*Delivery* is essential both at law and in equity to the validity of a gift *causa*

*mortis* and a *donatio inter vivos;* a mere promise is not sufficient, for, until the act is complete, there exists the *locus penitentiæ.*

But a *trust* may be created by the donor either in himself or in another, so as to make it unnecessary that there should be a delivery to the donee.

In an action on an instrument under seal, a court of law will only give *nominal* damages where the presumption of valuable consideration is negatived by something appearing on the face of the paper.

A court of equity will never enforce a specific performance merely because a court of law would give nominal damages.

The act of 1829, ch. 51, only enables the assignee of the evidences of debt therein mentioned, to sue in his own name, but does not alter the *nature* of the assignment.

A party has the right by *deed* of gift to dispose of his personal estate, reserving to himself a life interest in the usufruct.

Though equity will sometimes afford its aid to a wife or child against the settler's *heirs at law,* yet it will in no case enforce a voluntary agreement as against the *settler himself.*

APPEAL from the Equity Side of the Circuit Court for Prince George's county.

This was a bill of *interpleader* filed by the appellee, Clement Hill, to have ascertained to whom he should pay a certain single bill for $3500, executed by himself as principal, and his mother, Mrs. Ann S. Hill as surety, in favor of Mrs. Cornelia Lansdale.

The appellant, Cox, claimed the debt as surviving husband of his wife, Eliza Cox, who was a daughter of Mrs. Lansdale, and to whom he alleged it had been assigned by the paper writing, dated the 8th of August 1843, set out in the opinion of this court.

Sprigg and wife claimed the same by virtue of an assignment and *delivery* of the single bill after the death of Mrs. Cox, to Mrs. V. Sprigg, another daughter of Mrs. Lansdale.

Mrs. Lansdale in her answer admitted, that she executed the paper of the 8th of August 1843, but after the death of her daughter Eliza Cox, she changed her mind and determined to, and did give, assign and deliver the said single bill to her daughter Violetta Sprigg, wife of Samuel Sprigg, the appellee.

The facts of the case are sufficiently stated in the opinion of this court. The court below (CRAIN, J.,) decided and

decreed that the debt should be paid to Sprigg and wife, and from this decree the defendant, Cox, appealed.

The cause was argued before LE GRAND, C. J., EGGLESTON and TUCK, J.

*C. O. Magruder* for the appellant, argued.

1st. That Mrs. Lansdale intended by the instrument of writing given to Mrs. Cox to assign to her the *corpus* of the debt due from Hill, she to retain the accruing interest during her life; that she had the power to do so; that this writing is effectual for that purpose being accompanied by delivery to Mrs. Cox, and notice thereof to the debtor. 2 *G. & J.*, 36, *Aldridge vs. Weems.* 7 *Do.*, 265, *Kent vs. Somervell.* These cases show that the assignment was complete under the act of 1829, ch. 51. See also 7 *G. & J.*, 480, *Houston vs. Nowland.* 9 *Do.*, 77, *Hope vs. Hutchins.* 1 *G. & J.* 175, *Bowie vs. Duvall.* 3 *Md. Rep.*, 341, *Ins. Co. vs. Flack.* 7 *H. & J.*, 147, *Coale vs. Harrington.* 3 *Gill*, 251, *Chesley vs. Taylor.* 9 *Gill*, 440, *Hannon vs. Robey.* The intention of Mrs. Lansdale is clearly expressed and must be effected unless opposed to some settled rule of law; and it is clear that a remainder may be limited after a life estate in personal property. 6 *Pet.*, 68, *Smith vs. Bell.* 6 *G. & J.*, 172, *Evans vs. Iglehart. Chitty on Bills*, 251. 7 *H. & J.*, 257, *Bohn vs. Headley.* Here the vendor or donor became the trustee of the fund for her life to receive the interest for her own use, at her death the *corpus* of the debt to pass absolutely to her daughter; it was an executed *trust.*

2nd. The assignment purports to have been made on a good and valuable consideration. It has all the solemnities of a deed but the seal; is made in the presence of a witness with intent to make it irrevocable. She has not attempted to contradict the fact thus admitted; she would not be allowed to do so except upon the ground of fraud or duress; as between the parties the transfer was complete, it was an *executed* contract. *Story on Cont.*, Sec. 115. 7 *G. & J.*, 157, *Macubbin vs. Cromwell.* 2 *Johns. Ch. Rep.*, 1, *Osgood vs. Franklin.*

3 *H. & J.*, 137, *Hannan vs Towers.* 3 *G. & J.*, 214, *McNulty vs. Cooper.* 2 *H. & G.*, 114, *Stewart vs. State.*

3rd. Delivery of the *chose in action* was not necessary. The *debt* was assigned; it was not a negotiable instrument. By the contract, she as trustee was to hold the evidence of the debt to enable her to receive the interest. There was no inconsistency between her holding the paper and the title of the grantee. 7 *G. & J.*, 265. The service of a copy of the assignment and notice to Hill, fixed the fund in his hands. He knew then that Mrs. Lansdale was only a trustee; the matter was no longer open; he dealt with her as a trustee, and was bound from the time of the notice. 2 *White & Tudor's Lead. Cases*, 232, 233. "Delivery of the bond *or notice of the assignment* will be equivalent to the delivery of the goods." See also 2 *Kent*, 438.

4th. This is not the case of a creditor but of a volunteer, who can stand in no better position than the donor. Mrs. Lansdale, after the notice served on Hill, could not have revoked the transfer, and if so the transferring the new bond to Mrs. Sprigg, cannot effect it. But treat it as a *gift*, and still the same result will be produced. It is said delivery is essential, both at law and in equity, to the parol gift of a *chose in action*, (2 *Kent*, 438,) but he adds, "a mere intention or naked promise to give *without some act to pass the property* is not a gift." And so the delivery must be, if not actual, yet under the circumstances constructive or symbolical. 7 *Sme. & Mar.*, 428, *Carradine vs. Collins.* 9 *Ala.* 391, *Blakey vs. Blakey.* 13 *Do.*, 214, *Pope vs. Randolph.* The donor must part with the *dominion of the property* "by delivery, actual and real, or by some act clearly equivalent." 2 *Esp.*, 663, *Hawkins vs. Blewitt.* 2 *Johns.*, 52, *Noble vs. Smith.* The case of *Antrobus vs. Smith*, 12, *Ves.* 43, goes on the admission, that if the assignment had been delivered, it would have passed the *chose in action.* If the legal conveyance is actually made so as to constitute the relation of trustee and *cestui que trust*, as if stock is actually transferred, a court of equity will enforce the trust, (6 *Ves.*, 656, *Ellison vs. Ellison*,) if nothing further remains to be done to complete the *title* of the donee. 2 *Story's*

*Eq.*, secs., 706, *(a,)* 787, 793, *(a,)* 973, 1040. 3 *Myl. &* *Keene*, 297, *Fortescue vs. Barnett*. The cases relied upon by the other side, in 2 *G. & J.*, 208, and 3 *Md. Ch. Dec.*, 266, proceed on the same basis. In this case the court is required to say, that in the case of a bond, nothing short of actual *delivery of the bond itself* can create an executed trust, for the benefit of a third party, in the fund represented by the bond; that a draft on the obligor accepted by him, or a formal assignment of the debt and notice to the obligor, or an assignment of the debt, reserving the interest to be paid to the obligee till the maturity of the debt, and notice, and a copy served on the obligor, will not, as between the parties, transfer the debt. We must look to the nature of the gift; it was not the whole debt and interest. And we must see the instruments or means by which it was to be perfected, one or the other, the donor or the donee must be the trustee to hold the evidence of the debt, or it might be a third party. The change of that evidence was contemplated. But in whatever form it might be put, the only *locus penitentiæ* left to the donor was over the interest.

5th. The court will remand the case, if they deem it necessary, to supply any defect in the proof or pleadings. Act of 1832, ch. 302. 9 *G. & J.*, 80, *Clagett vs. Hall.* 6 *Gill*, 105, *Hilleary vs. Hurdle.*

*Thomas G. Pratt* for the appellees.

1st. As to the liability of Mr. Hill: we say, he cannot be held liable to any of the parties to this suit beyond the amount due by him on his single bill of November 1847. He borrowed the money, and as we say, gave in the first place a *negotiable note* therefor, payable in five years. The assignment under which Cox claims, calls it a *note*, and says it was *endorsed.* Cox himself says it was a *note*, and so does the witness Boardman, who says, moreover, that it was payable to Mrs. Lansdale or *order*. The bill is the only evidence on the other side to show that it was a *single bill.* They say, that Hill is liable to them after notice of the assignment. His obligation was, to pay in five years to the order of Mrs. Lansdale. Her's was to receive the money and stop the interest. She could not prolong

the time of payment until her death by any assignment whatsoever. There is no allegation that he ever assented to this assignment, or agreed to hold the money for the benefit of her assignee. The contract therefore was one which the parties had no right to assign. All obligation on Hill's part upon the note of 1842, ceased by the delivery of it to him by Mrs. Lansdale, to whose order it 'was payable, and that note was extinguished, destroyed, settled and paid by the single bill of 1847.

2nd. Hill having thus taken up the original note as he had a right to do, (of which right no court could deprive him,) it is clear, that if the assignment of this note to Mrs. Cox by the paper of 1843 did not prevent the subsequent assignment of the *single bill*, Sprigg and wife have a clear title to it by the assignment and delivery thereof to Mrs. Sprigg. 3 *G. & J.*, 214, *McNulty vs. Cooper.*

3rd. Now, was this paper of 1843 executed for a *valuable* consideration? There can be no doubt that it was the design of Mrs. Lansdale to *give* the note to her daughter. The paper itself speaks of it as a *gift* for natural love and affection. If she had intended a *sale* she would not have used language so inapplicable as this. Boardman's testimony is to the same effect. This paper then was a *gift*, and the donor's object was to give the note to her *daughter and her children;* would that object be effected by the sale now asked for by the appellant? The daughter is now dead, and the surviving husband and his creditors are the parties sought to be benefitted. After the death of her daughter, and when she found that the money would go to the appellant, she changed her mind and gave it to her other daughter. Suppose Mrs. Lansdale had received the money at the maturity of the note and given it to Sprigg and wife, could this paper have prevented her doing it? They say she became a trustee, but this would only have made her answerable for a breach of the trust but would not have affected the *validity* of the gift to Sprigg and wife. We say then, that this paper was only intended as a gift of the note mentioned in it, and that no gift of a promissory note payable to the order of the donor would be effectual without the

endorsement of the donor and the *actual delivery of the note to the donee.* 2 *Kent,* 438. 2 *G. & J.,* 208, *Pennington vs. Gittings.* 3 *Md. Ch. Dec.,* 266, *Hitch vs. Davis.* 1 *Phillips,* 342, *Meek vs. Kettlewell,* and the same case in 1 *Hare.,* 474. 1 *Myl. & Cr.,* 226, *Edwards vs. Jones.* 12 *Ves.,* 39, *Antrobus vs. Smith.* 1 *Madd. Ch. Rep.,* 103, *Cotteen vs. Misring.* 1 *Dyer,* 49. 2 *White & Tudor's Lead. Cases,* 232, 234, 239. 2 *Bailey's Rep.,* 588, *Pitts vs. Mangum.* 18 *Johns.,* 145, *Fink vs. Cox.* 2 *Do.,* 52, *Noble vs. Smith.* 7 *Do.,* 26, *Pearson vs. Pearson.* 1 *Swanst,* 486, *Hooper vs. Goodwin.* 1 *Dev.,* 309, *Picot vs. Sanderson.* 5 *G. & J.,* 54, *Bradley vs. Hunt.*

The act of 1829, ch. 51, was not intended to enlarge the power of making assignments, by making those valid and effectual which were not so before, but simply gave the right to the assignee under a *good* assignment to sue in his own name. 10 *G. & J.,* 419, *Jones vs. Hardesty.* Equitable assignments which would have been void before it, are *void still.*

*Joseph W. Bradley* for the appellant in reply.

In order to ascertain the position of Hill, we must first ascertain, what was the nature of the original instrument held by Mrs. Lansdale. Hill, himself, who of all others should best know what it was, says it was a *single bill,* and Sprigg and wife admit that it was a *single bill.* I shall therefore regard it as an instrument under seal.

I admit, as a general rule, that equity will not enforce a voluntary contract, but such is not this case. My position is that where the holder of any evidence of debt does an act which *binds the right,* he is bound without delivery. An *assignment* with *notice* to the debtor has this effect. This is the general rule. Apply it to this case. Mrs. Lansdale *holds* the debt of Mr. Hill. She then executes an instrument by which she says, "I do *now give*" this note or the debt represented by it with the reservation of the interest during my life to my daughter, Mrs. Cox. By this act she parts with her *dominion over the body* of the debt just as much as one pass-

ing a *slave* and reserving the usufruct. That she had this *intent* is beyond all question. I agree that neither she nor her assignee could bind Hill to continue her debtor during her life, but when he paid the money who was to participate in the fund? I answer, Mrs. Cox: the fund was to be her's no matter how or in what form it may have stood. When he paid the money he should have given notice to Mrs. Cox, and she could have applied to a court of chancery to have the principal invested during the lifetime of Mrs. Lansdale; this was her right. It is conceded that if this was not money but negroes, it might be limited over, reserving a life estate. But the authorities show that this makes no difference, and that a debt may be treated in the same way. Upon what principle can the two be distinguished?

The assignment was for a valuable consideration. She meant both to *sell* and to *give* the note to Mrs. Cox. The paper shows this upon its face; its words are "grant, sell, assign and make over;" would she be permitted to deny this in a court of equity? In order to prevent the other children from saying it was an advancement, she expressly says it was a *sale*. She has put into this paper *ex abundanti cautela,* what neither she nor any volunteer claiming under her will be permitted to deny. 6 *H. & J.*, 61, *Dorsey vs. Smithson.* But again, could she assign without delivery? Wherever the retention of personal property is consistent with the transfer of the title the transfer will be valid without delivery. Such was this case. The assignment does not profess to pass the whole; it passes the debt but reserves the *interest.* There is no rule of law to forbid this, even independent of the act of 1829, ch. 51. As between the parties the assignment binds them, and as between them and the debtor the notice binds the latter. Here both the assignment and the notice were given. Is it not then an *executed* contract? What more remains to be done? So far as Mrs. Lansdale was concerned it is complete.

But suppose it was a *voluntary* conveyance. I admit that such are null so long as they remain voluntary, and that when the voluntary grantee is the actor, seeking the aid of the court, it will not interfere. But we are asking nothing to be enforced

as against Mrs. Lansdale, but she is the actor seeking to set aside what she calls a voluntary conveyance to us by a subsequent assignment to another daughter. The renewal of the note was not the extinction of the debt; that was never paid, but remained still in the hands of Hill. We are not asking aid of the court, but they by a subsequent assignment are asking for the money.

But again, I say this was an executed *trust.* Mrs. Lansdale does that which is equivalent to delivery. The case in 3 *Md. Rep.*, 341, of the *Ins. Co. vs. Flack,* is conclusive on this point. Mrs. Lansdale has constituted herself a trustee under an executed trust, as completely as if instead of holding the note herself she had placed it in the hands of Mrs. Thomas as trustee. Where is the difference between her putting it in the hands of another as trustee and retaining it herself, with this explicit declaration of the trust?

Le Grand, C. J., delivered the opinion of this court.

The bill in this case was filed by Clement Hill, for the purpose of having determined, by the proper judicial tribunals, to whom he was to pay a sum of money due by him on a single bill, executed in favor of Mrs. Cornelia Lansdale, now deceased. The facts which it is important we should notice, may be thus stated: Mr. Hill, to secure the payment of a sum of money borrowed from Mrs. Lansdale, executed what he calls his single bill in her favor, payable five years after date.

On the 8th of August 1843, she executed and delivered to her daughter, Mrs. Cox, wife of John F. Cox, the following paper: "From natural affection for my daughter, Eliza Cox, and in consideration of one dollar to me paid by her, I do hereby give, grant, sell, assign and make over to her, and to her heirs and assigns, a certain debt of three thousand, five hundred dollars, due to me by Clement Hill, for money loaned to him; said debt is now represented by his note, dated 1st November 1841, payable five years after date, with interest, payable annually, and is endorsed by Mrs. Ann S. Hill, but it may be put in some other form. But I reserve to myself, and to my own use, said interest as it falls due, (or so much there-

of as I may receive,) during my natural life. It being my intention by this writing to secure said sum or debt, with the unpaid interest on the same, to my said daughter, Eliza Cox, and her heirs, at the time of my decease, without reference to my will, or devise of my other property. Washington city, August 8th 1843. Cornelia Lansdale. Witness, W. C. Boardman." A copy of this assignment was delivered to Mr. Hill, who subsequently, that is to say, on the 1st of November 1847, took up the original evidence of his indebtedness by executing under seal, together with his mother, the said Mrs. Ann S. Hill, an obligation payable to the order of Mrs. Lansdale, five years after date, for the sum of $3500. It appears Mrs. Cox died sometime in the year 1851, and that after her death, Mrs. Lansdale assigned and delivered to her daughter, Mrs. V. Sprigg, the bill of Mr. Hill and his mother. The controversy arises out of these two assignments. It is not denied, that if she was not precluded by the paper signed by her on the 8th of August 1843, Mrs. Lansdale had a perfect right to assign and deliver the bill to Mrs. Sprigg, and, that the latter would be entitled to the fund now due and owing on it by Mr. Hill and his mother.

If the execution and delivery of the paper, dated the 8th of August 1843, constituted a complete and perfect gift, then it was incompetent for Mrs. Lansdale to assign, as she did, the bill to Mrs. Sprigg. The first inquiry therefore is, what was the effect of the paper of the 8th of August 1843? This question suggests another, which is, what was the *character* of the paper to which the assignment referred? It has not been exhibited in evidence, and the reference to it, in different parts of the record, is under different designations. In the bill of complaint of Mr. Hill, it is described as a single bill, and admitted to be such in the answers of Mr. and Mrs. Sprigg. It is called a *note* in the assignment of Mrs. Lansdale, and in the answer of the appellants. We conclude from all the record it was a single bill; that is, had attached to the signature of Mr. Hill a seal. It seems to be but a just inference from all that has been disclosed to us, that such was its character, and, that the parties indifferently designated and mentioned it as a note, and

as a single bill. It is perfectly apparent, that Mrs. Lansdale was not aware of the distinction between a note and a single bill, for, when she comes to assign the obligation bearing the seal of Mr. Hill and his mother, she, by an endorsement on it, says, "I hereby assign and deliver to my daughter, V. Sprigg, the within *note.*" We shall therefore consider it a single bill, as alleged by Mr. Hill, and admitted by Mr. and Mrs. Sprigg.

It has not been contended on the part of the appellant, that it was a gift *causa mortis,* but that it was a *donatio inter vivos.* In either case however, in some particulars, the law is the same. Both at law and in equity, *delivery* is essential to the validity of the gift. A mere promise is not sufficient, for, until the act is complete, there exists the *locus penitentiæ.* 2 *Kent,* 438. But, it is said, there need not be, in all cases, an *actual* delivery of the thing to the *donee;* that this can be dispensed with, provided there be any thing done which is *equivalent* to it. There is, undoubtedly, a class of cases where a *trust* has been created by the donor, either in himself, or in another, which makes it unnecessary there should have been a delivery to the donee. Of this kind is the case of *Ex-parte Pye vs. Ex-parte Dubost,* 18, *Vesey,* 145. There Lord Eldon held, that although a court of equity will not assist a volunteer, yet if the act be completed the court will act upon it; and also, that although an agreement to transfer stock would not be enforced, yet if the party declared himself to be the trustee of that stock, it became the property of the *cestui que trust* without more, and the court would act upon it. In the case now before us, there is no evidence of a delivery to the wife of the appellant, nor to any one else as trustee for her. It is true Mr. Boardman testifies, that he understood and believes the single bill referred to in the paper of the 8th of August 1843, was by Mrs. Lansdale delivered, for the benefit of her daughter, Mrs. Cox, to another daughter, Mrs. Thomas. He moreover says, that Mrs. Thomas, in his presence, admitted to Mrs. Cox, the paper had been delivered to her, and promised to hand it to the latter immediately after the death of their mother. This testimony is but hearsay, the witness not professing to have any personal knowledge of such delivery. Besides, Mrs. Thomas, in the

most emphatic and unqualified manner denies ever having made any such acknowledgment or promise; and disclaims, with equal emphasis, any knowledge of the existence of the paper up to a comparatively recent period.

There is no evidence that the complainant, Clement Hill, ever consented to become the trustee of Mrs. Cox; and without his consent, it was not competent to make him so beyond the maturity of his obligation. When due, he had a right to pay it. It was not in the power of Mrs. Lansdale, without his consent, to continue him her debtor until the period of her death, if that should not take place until the maturity of his obligation. When it was due he paid it, by giving the obligation of himself and mother. If, therefore, there was any trustee in the case, it was Mrs. Lansdale. We see nothing in the proof to bring us to such a conclusion. The assignment was not made under seal, and although it professes to have been made in consideration of one dollar, as well as from natural affection for her daughter, it is clear from all the testimony, and especially that of Mr. Boardman, natural affection and love constituted the sole consideration.

Although a court of *law* may give damages in an action upon an instrument *under seal* where there is nothing on the face of it to repel the presumption of *valuable* consideration, it will only give *nominal* damages in cases where the presumption is negatived by something appearing on the face of the paper. In such cases, *Mr. Atherley* observes, at *page* 144 of his *Treatise on Marriage Settlements,* that a court of equity, "will never enforce a specific performance, *merely because a court of law would give nominal damages."* But, independently of this, courts of equity regard the substance, and not the mere form of the thing. In the case however before us, the alleged assignment in favor of Mrs. Cox, was not under seal, and therefore, the distinction between sealed and parol contracts, which gives to the former stronger presumptions in their favor, does not apply.

It is said the act of 1829, chapter 51, made this a good assignment, the force of which would enable the appellant, as the survivor of his wife, to maintain an action. In this view

we do not concur. That act only enables the assignee to sue in his own name. It does not alter the nature of the assignment. *Jones vs. Hardesty*, 10 *Gill & John.*, 419.

We must not be understood as denying the right of a party, by *deed* of gift, to dispose of his personal estate, reserving to himself a life interest in its usufruct. Such were the cases of *Hope vs. Hutchins*, 9 *G. & J.*, 77, and *Hannon's Ex'rs. vs. The State, use of Robey & wife*, 9 *Gill*, 440; see also the case of *Caines vs. Marley*, 2 *Yerger*, 582, which in its facts and principles is very like that of *Hope vs. Hutchins*. In all these cases there were solemn deeds executed and registered with all necessary formality. The case before us is not like unto either of them, for in it there was no publicity nor an adequate consideration, nor a delivery to a third party in trust. But it is supposed the case of *Fortescue vs. Barnett*, 3 *Mylne & Keene*, 36, (8 *Cond. Chan. Rep.*, 265,) is a case in point. That was the assignment of a policy of insurance, an instrument not assignable in its nature at law, but by contract; but inasmuch as the practice of the insurance office was stated to be, that upon an assignment the office recognized the assignee, the policy was therefore held to be an assignable instrument. Although the policy in that case was not delivered with the assignment, the court held it to be a good gift. But in the case of *Edwards vs. Jones*, 1 *Mylne & Craig*, 226, the lord chancellor, whilst acquiescing in the correctness of the principle on which the case of *Fortescue vs. Barnett*, was *professedly* decided, very plainly intimates the conclusion arrived at was not justified by the facts. The case of *The New York Life Insurance Company vs. George W. Flack*, 3 *Md. Rep.*, 341, also relied upon by the counsel for the appellant, does not sustain them. In that case, by the express language of the policy, it was assignable, provided the company had notice of the assignment within a certain time. Although it does not appear in the printed statement of the case, it does however in the record which we have examined, that the *policy* was delivered at the same time with the assignment.

In regarding voluntary settlements it is important to keep constantly in view the party against whom it is asked they

shall be enforced. For although equity will sometimes afford its aid to a *wife* or *child* against the settler's *heir at law*, the better opinion is, that it will not do so against the *settler*. *Mr. Atherley*, in his excellent work on *Marriage Settlements*, after a full and able analysis of the cases on the subject, says: "I am strongly inclined to think, that as *against the settler himself*, equity should *in no case* enforce a voluntary agreement. If a man *voluntarily* does an imperfect act, it seems to be but reasonable, that the completion of it should be left to his own discretion, and not to enforce a completion where he may have strong reasons for altering his intention. But where he dies, without having indicated any change in his intention, it may be presumed he has made none; and therefore, in that case, it may be proper, generally speaking, to enforce the agreement against his heir at law." We regard Mrs. Sprigg as standing in the place of her mother, Mrs. Lansdale, the settler, for if, as we have shown, Mrs. Lansdale had the right to make the assignment and delivery which she did, to her daughter, Mrs. Sprigg, the latter took all the rights of her mother.

On the whole, judging of the case, as we are bound to do from the circumstances disclosed to us in the record, we are of opinion, that the transaction between Mrs. Cox and her mother cannot be regarded as a sale, but as an intended gift, and as such incomplete, because of the want of delivery to her or some one for herself; and that being a purely voluntary gift, incomplete in itself, a court of equity will not interfere to give it vitality and force. If there were anything in the record showing us that the appellant could produce additional evidence going to establish a trust, or a delivery, we should remand the cause for that purpose, but we discover none such, and accordingly affirm the decree of the circuit court.

*Decree affirmed.*