GEORGE W. SMITH, JR., and M. S. BARBER, Executors,
   vs. FRANCES M. DARBY, Guardian and next friend of
   JOHN McD. McKEE and others.

*Sufficient declaration of a Trust— When a Legacy will not be held
   as a Satisfation of an Obligation— When a Trustee who fails to
   invest the trust Fund, will not be charged with Compound
   interest.*

John McKee lent his son Leander, about $4000, and took his note for the
   amount. The father repeatedly stated that he did not intend to collect the
   money from his son, but would secure it to his son's children. The son
   died; after his death, the father had some correspondence and frequent con-
   versations with McDowell, the agent of the widow and administratrix of the
   son, as to the best method of investing the money for the children, and it
   was finally determined that it should be lent to McDowell, the agent; the
   money was accordingly lent to him, he executing and delivering to the
   father the following single bill which was drawn at his request and under
   his instructions:

"$4000.

   "One year after date, I promise to pay to John McKee the sum of four
   thousand dollars, with interest from date, the interest payable semi-annually;
   the said sum of money aforesaid being held by the said John McKee in trust
   for the children of Leander McKee, deceased, to wit: John McD., Isabella
   and Wm. L. McKee, and the interest thereof to be invested by him, the said
   John McKee, for the children aforesaid. This 17th day of April, 1866."

                                        WM. M. McDOWELL, [*seal.*]

Upon the execution of this single bill John McKee delivered the evidences of
   his son's indebtedness, to McDowell to be cancelled. On the 19th of Octo-
   ber, 1867, this single bill was taken up, and there was substituted in its
   stead, a note of that date, for the same amount, payable one year after date,
   with interest from date, to "John McKee or order." This note did not
   specify the trust as the single bill. Nearly the whole of the money so lent,
   was paid in the life-time of John McKee, and the small balance remaining
   unpaid, was paid to his executors after his death. John McKee by his will

bequeathed the sum of $6000 to the children of his deceased son, Leander. On a bill filed by the guardian of these minor children to enforce, as against the executors of John McKee, the trust alleged to have been created by him in favor of said children, it was HELD:

1st. That by the single bill prepared at his instance and under his instructions, and which he accepted, John McKee constituted himself trustee for the children, of the money for which the single bill was given, as fully and completely, as if he had signed a written declaration of the trust.

2nd. That it was not necessary to the validity of the trust that John McKee should have signed his name to the single bill, or notified the children of the existence of the trust, or have delivered the single bill to them, or to some person for them.

3rd. That the trust so created, could be enforced against the executors of John McKee.

4th. That the legacy given by John McKee to the children of his son, was not a satisfaction of the trust.

When a trustee receives money which he should invest for the use and benefit of his *cestuis que trust*, but fails to do so, he will be charged with only simple interest, it not appearing that he used the trust funds, or employed them in his business, or in any other way by which he could have made gains.

APPEAL from the Circuit Court for Washington County, in Equity.

The bill in this case was filed by the appellee as guardian of the children of Leander McKee, deceased, against the appellants as executors of John McKee, deceased, to enforce against them a trust alleged to have been created by their testator in his life-time, in favor of said children. The note or single bill referred to in the opinion of the Court, is as follows:

$4000.

One year after date, I promise to pay to John McKee, the sum of four thousand dollars, with interest from date, the interest payable semi-annually; the said sum of money aforesaid being held by the said John McKee in trust for the children of Leander McKee, deceased, to

wit: John McD., Isabella and Wm. L. McKee, and the interest thereof to be invested by him, the said John McKee, for the children aforesaid. This 17th day of April, 1866.

WM. M. McDOWELL, [SEAL.]

The Court below (PEARRE, J.,) adjudged that the principal sum of $4000 was, by John McKee, in his life-time, made and created as a trust fund in his own hands for the benefit of the children of Leander McKee, deceased, the interest thereon to be received by him semi annually and invested for the benefit of said children until the oldest attained the age of twenty-one years. And the Court thereupon decreed the said trust to be established against the executors of the said John McKee, deceased, and that they should be charged with the said sum of $4000, together with the interest thereon, payable semi-annually from the 17th of April, 1866, and also with interest upon such semi-annual interest, to be accounted for after the expiration of thirty days from the times when the semi-annual interest became payable, and under the terms of the trust declared, should have been invested. From this decree the executors appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and MILLER, J.

*George W. Smith, Jr.*, for the appellants.

There is not sufficient evidence in this cause to establish a trust. It is well settled that, whether a trust is *perfectly created* or not, is a question of fact in each case, and Courts in determining the fact will be governed by all the circumstances surrounding each particular case. The appellee, to establish a voluntary trust, without consideration, must show that John McKee created this trust, by a clear and explicit declaration, duly executed, and *in-*

*tended* to be final and binding on him. *Perry on Trusts, Secs.* 96 *to* 100, *inclusive; Ex parte Pye,* 18 *Vesey,* 140.

The note, or single bill, dated the 17th April, 1866, is the only evidence in this cause of a declaration of trust, and it does not show a clear and explicit declaration, duly executed and *intended* to be final and binding on him. He simply agreed that said note should be drawn in the manner it was, payable to *himself,* not payable to John McKee, trustee, and retained it in his possession, and, after the lapse of eighteen months, destroyed or cancelled it, and gave it up to its maker, taking a common promissory note in its stead. *Uniacke vs. Giles,* 2 *Moll.,* 267, *cited by Hill on Trustees, side page* 110.

McDowell says, that McKee and witness went to Mr. Hamilton, "and Mr. McKee stated the kind of paper he wished drawn, and the *object he had in view."* This is the only evidence of any declaration of a trust, which, coupled with the acceptance of said note, is relied upon to establish a trust in this cause. The circumstances in this case abundantly show that McKee did not regard this as a complete trust, by which he had separated, absolutely, $4000 from his estate, because he exercised control over it as his own individual property, and was not satisfied in his own mind how he could complete the trust; this is shown by his changing the notes, and also by his letter to McDowell in 1868, and by *his never communicating the trust to the cestui que trust.* If, therefore, the trust was not regarded as complete by McKee, it will not be enforced.

A Court of Equity will take no notice of a contract merely voluntary, and which remains *in fieri.*

After McKee had failed to complete the trust, as he originally designed, he kept the fund as a part of his own estate, and provided for said infants in his will, giving to them a sum greater than said fund would amount to.

If, then, the trust was not complete, or if the alleged donor, at the time he took said note, did not intend to

part absolutely with $4000, and to separate the same entirely from his estate, then the decree below must be reversed. *Swan vs. Frick,* 34 *Md.,* 139; *Ellison vs. Ellison,* 6 *Vesey,* 656; *Ex parte Pye,* 18 *Vesey,* 140; *Antrobus vs. Smith,* 12 *Vesey,* 39; *Perry on Trusts, secs.* 99 *and* 100, *and notes; Pennington vs. Gittings,* 2 *G. & J.,* 208; *Jones vs. Lock,* 1 *Ch. App.,* 25, (*Law Reports.*)

But even conceding that this trust has been duly declared, it has been fully satisfied and redeemed by the bequest, afterwards made by the alleged donor to said infants in his last will. This is a bequest of $6000 to said infants, payable in 6 per cent. paper, and is precisely of the same character as the alleged trust. It is, in the language of the law, *ejusdem generis.* The bequest is larger and more beneficial to the donees than their claim in this case, and has been paid to them. It is laid down as law in 2 *Story Eq. Juris., Sec.* 1105, that "where the thing substituted is *ejusdem generis,* and is clearly of much greater value and much more beneficial to the donee than his own claim, there the presumption of an intended satisfaction is generally allowed to prevail." 2 *Story Eq. Juris., Secs.* 1099 *to* 1110, *inclusive; Pym vs. Lockyer,* 5 *Mylne & Craig,* 29, 35.

But it is objected that the testator did not stand *in loco parentis* to these children, and therefore such presumption of satisfaction does not apply in this case. It is not necessary for a person, who stands *in loco parentis,* to assume all the duties of a parent; the only question is, did he intend to provide a portion for these children, or merely to bestow a gift; did he intend to provide for them a portion out of his estate, which their deceased father would have received if living? If he intended a portion or provision, then he is regarded as standing *in loco parentis. Pym vs. Lockyer,* 5 *Mylne & Craig,* 29; *Ex parte Pye,* 18 *Vesey,* 140; 2 *Leading Cases in Equity,* 294, *side; Powys vs. Mansfield,* 3 *Mylne & Craig,* 359.

The circumstances of this case show conclusively that John McKee, the grandfather, put himself in the place of the deceased father in making provision for these children. If the donor's son, Leander, had been living, he would have received this portion of his father's estate, and it would have been left for the father to provide for these infants out of the portion so received; but Leander, the father, being dead, the grandfather came *in loco parentis* in providing for these children, and in doing so did not intend to give them a double portion. All the circumstances of the case lead to the conclusion that John McKee desired these children to receive such portion of his estate as their father would have received if living.

The Court below, by its decree, requires that the interest in the said fund shall be computed from the 17th day of April, 1866, *compounding the interest every six months*, up to the 17th day of April, A. D., 1873.

If John McKee held this fund in trust, he held it in the same manner as any trustee would hold a trust fund, and is only liable to the extent that trustees ordinarily would be. Trustees are not charged with compound interest on the ground of negligence or even mismanagement. *Tebbs vs. Carpenter*, 1 *Maddock's Ch. Rep.*, 290; *The State of Conn. vs. Jackson*, 1 *John. Ch.*, 13; *Atty. Genl. vs. Alford*, 31 *Eng. Law & Eq.*, 466.

There is no negligence or misfeasance charged in the bill as to the management of the trust, and a Court of Equity can only decree on the allegations of the bill. *Ringgold vs. Ringgold*, 1 *H. & G.*, 75.

The trustee cannot be held for compound interest, as there is no proof that he received the interest *semi-annually*, except as to the first or second year, as shown by McDowell's testimony before the auditor. *Darne vs. Catlett*, 6 *H. & J.*, 475; *Diffenderffer vs. Winder*, 3 *G. & J.*, 311.

This is not a trusteeship, where the trustee has betrayed his trust, grossly violated his duty, or been guilty of unreasonable negligence, and cannot be dealt with according to the rules of strict, if not rigorous, justice. *Diffenderffer vs. Winder*, 3 *G. & J* , 371.

*Francis M. Darby* and *Attorney General Syester*, for the appellee.

The evidence in this case establishes a trust in favor of the children of Leander McKee, as against the estate of John McKee. John McKee declared himself trustee of $4000, to be held for the benefit of these children. See *Wheatley vs. Purr*, 1 *Keen*, 551 ; *McFadden vs. Jenkyns*, 1 *Hare*, 463, *and affirmed by Ld. Chancellor* LYNDHURST, 1 *Phillips*, 153 ; *Morgan vs. Malleson*, 10 *Equity Cases*, (*L. Reports*,) 475 ; *Collinson vs. Pattrick*, 2 *Keen*, 123 ; *Fortescue vs. Barnett*, 3 *M. & K.*, 36.

The foregoing cases furnish examples as to what will amount to a declaration of a trust ; and they establish also that a voluntary trust, once created, is irrevocable. *Collinson vs. Pattrick*, 2 *Keen*, 123. A trust in respect to personalty may be made by parol. *McFadden vs. Jenkyns*, 1 *Hare*, 463, *and* 1 *Phillips*, 153 ; *Morgan vs. Malleson*, 10 *Equity Cases*, (*Law Reports*,) 475.

A party creating the trust may retain possession of the property impressed with the trust ; and no change or transfer of possession of property is necessary to vest the beneficial interest in the *cestui que trust*. *Collinson vs. Pattrick*, 2 *Keen*, 123.

The declaration of a trust is considered in Equity as equivalent to a *transfer in a Court of Law ;* and if the transaction by which the trust is created, is complete, it will not be disturbed for want of consideration, (2 *Keen*, 123,) and it is irrevocable. See also *Ex parte Pye and Dubost*, 18 *Vesey*, 149.

But it is contended by the appellants, that conceding this trust to be duly created and established, yet by rea-

son of the legacy given in the will of John McKee to these children, the trust is satisfied; and they rely on what is known as the "leaning of Courts against *double portions.*"

The doctrine from which this "leaning of the Courts" is deduced, is called satisfaction. It is a presumption of law; a purely artificial doctrine, resting on no solid or rational grounds. It arises where a man, being under an obligation (moral or legal) to do an act, does that by will which is capable of being considered as a performance or satisfaction of the obligation. It implies the doing or giving of something equivalent to the right extinguished. It is never applied except in the case of parent and child, or one standing in the place of parent. It has met with pointed reprobation from the wisest and best of England's Chancellors, Ld. THURLOW, in *Grane vs. Salisbury,* 1 *Bro. Ch.,* 425, 426, and Ld. ELDON, in *Ex parte Pye and Dubost,* 18 *Ves.,* 140.

Judge STORY, (*secs.* 1100 *and* 1101, *Eq. Juris ,*) calls in serious question the extent to which the Courts have carried this matter of presumption; whilst in secs. 1110 and 1113 he subjects the doctrine to unanswerable criticism. Nevertheless, it is a doctrine, resting only on authority, and there is no disposition in the Courts to extend its application beyond adjudged cases. The foregoing authorities establish that it has no application to legacies to strangers, and that grandchildren, uncles and aunts, nieces and nephews, brothers and sisters, are *strangers in the sense of this doctrine.* 2 *White & Tudor's L. C. in Equity,* 294; *Story Eq. Juris.,* sec. 1118.

John McKee having taken upon himself the duty of a trustee in respect to this fund, must be held to all the ordinary duties and obligations of a trustee. It was his plain obligation and duty to have invested the fund according to the terms and in the manner specified at the time of its creation. It was expressly intended to *accu-*

*mulate,* and this accumulation was intended to be worked out by investing the interest, so that the fund would yield compound interest.

It was one of the very terms attending the creation of the trust impressed upon it in the beginning. And the decree of the Court in this regard imposes nothing on the estate other than the deceased himself distinctly and unequivocally charged it with in his own life-time. As to the negligence or omission of trustees to invest, &c. See *Diffenderffer vs. Winder,* 3 *G. & J.,* 311 ; *Ringgold vs. Ringgold,* 1 *H. & G.,* 11.

There can be no question that the Court will charge a trustee with compound interest when by the terms of the creation of the trust or instrument, he is required to accumulate the fund in that way. *Byrne vs. Norcott,* 13 *Beav.,* 336 ; *Barney vs. Saunders,* 16 *How., U. S.,* 535.

GRASON, J., delivered the opinion of the Court.

The object of this suit is to enforce a trust against the executors of John McKee, which, it is alleged, was created by him in his life-time, in favor of the three infant children of his son Leander McKee.

The proof shows that Leander, before and at the time of his death, was indebted to his father in the sum of four thousand dollars, and that John McKee had repeatedly expressed the intention not to collect that sum from Leander, but to secure it to his, Leander's children. After Leander's death, John McKee had some correspondence and frequent conversations with William M. McDowell, who was the agent of Leander's administratrix in the settlement of his estate, in relation to the sum thus due him, and the best method of investing it for the children, and it was finally determined that the money should be lent to McDowell ; the loan was accordingly made to him; the evidences of Leander's indebtedness were delivered up to McDowell to be cancelled, and

the latter executed and delivered to John McKee the note or single bill, a copy of which is set out in the record. This note was drawn at the request and under the direction of John McKee, and was executed and delivered to him on the seventeenth day of April, 1866. It appears that this note was taken up by the substitution of another note of McDowell for the same amount, dated October 19th, 1867, and made payable to "John McKee, or order."

It further appears that John McKee became uneasy about the safety of the investment, and that in January 1868, he wrote to McDowell requesting security or payment. McDowell had offered to have his life insured for five thousand dollars and to transfer the policy to John McKee as collateral security for the loan to him. This was declined, and nearly the whole sum was paid to John McKee in his life-time, and the small balance then remaining, was paid to his executors after his death. It also appears that John McKee, by his will, bequeathed the sum of six thousand dollars to Leander's children.

In the argument of the case three questions were presented for our consideration; first, was there a valid trust created by John McKee in favor of Leander's children of this sum of four thousand dollars? second, was the bequest of six thousand dollars to those children by John McKee's will a satisfaction of the trust, and third, if the trust is valid and not satisfied, what interest ought to be allowed on the trust fund against John McKee's estate?

First. It is a well established principle that a parol declaration of a trust of personal estate is sufficient. This was admitted in the argument; but it was contended that in this case no trust had been completed, so as to be capable of being enforced, because John McKee had not signed his name to the single bill executed to him by McDowell; had retained possession of it, instead of delivering it to the children, or to some person for them, and had never given them notice of the trust. The note was

prepared at the instance and under the instructions of
John McKee for the express purpose of securing the pay-
ment of the money for the use of the children, and by its
very terms the money was to be paid to him as trustee for
the children, and he, well knowing its contents; accepted
it from McDowell. By so doing he constituted himself
trustee for the children, of the money, for which the note
was given, as fully and completely as if he had signed a
written declaration of the trust.

It was not necessary to the validity of the trust that he
should have signed his name to the note, or notified the
children of the existence of the trust, or have delivered
the note to them, or to some person for them.   *Pye, Ex
parte.   Dubost, Ex parte,* 18 *Ves.,* 145; *Cox vs. Sprigg,*
6 *Md.,* 284; *Gardner vs. Merritt,* 32 *Md.,* 84; *Wheatley
vs. Purr,* 1 *Keen,* 558.

If John McKee had designed to revoke the trust at the
time he took the note payable to himself or order, in the
place of the single bill which was payable to him as trus-
tee for the children, his object could not have been
effected, for when a trust is once created it cannot be re-
voked.   This principle is too well established to need any
citation of authorities in its support.   But the proof
shows that he had no such design, for he always spoke of
it as the children's money, and evinced great solicitude as
well as an unwavering intention to have it safely invested
for their use and benefit, and declined taking the life-
policy as security, because he was apprehensive that the
children might be delayed in receiving their money until
after McDowell's death.   The letter in which he declines
to takes the policy as security, speaks of the money as
belonging to the children, and is dated 6th January, 1868,
long after the date of the note, which was given in place
of the single bill.   It is therefore evident that John
McKee had not the power, and never entertained a design
to annul the trust.

Smith & Barber, Ex'rs, *vs.* Darby, Guard.

Second   But it was contended that the bequest by the will of John McKee to these children of a sum greater than that, which was secured by the note, was in satisfaction of the four thousand dollars.   When a party is under a legal or moral obligation to do an act, and does that by will which is capable of being considered as a performance or satisfaction of the obligation, the law raises the presumption that the provision by will is in satisfaction of the obligation.   But this presumption never arises except in the case of parent and child, or one standing *in loco parentis,* and to prevent double portions which are not favored by the Courts.   There is nothing, however, either in the note which John McKee took from McDowell, or in the letters he wrote, both before and after the date of the note, which indicates any intention upon his part to stand in the place of a father to these children.   On the contrary they furnish the strongest evidence of his intention merely to invest a sum of money for their benefit, to accumulate by the reinvestment of the interest until the eldest of the children should arrive at age, when the amount was to be paid over to them.   It was not intended for their maintenance or education, for he expressly declared that their father's estate was sufficient for those purposes.   Neither of the children ever lived with him, but their mother married a second time and removed with them to the State of New Jersey.

No presumption, therefore, arises in this case that the bequest was a satisfaction of the trust created in favor of the children.   But even if such a presumption did arise, it is rebutted by the proof in the cause; for in speaking of the investment of the four thousand dollars for the children, he told McDowell that he *also intended to provide for them in his will.*

Third.   In the case of *Ringgold vs. Ringgold,* 1 *H. & G.,* 79, 80, it was held, that where a trustee was directed to invest and reinvest dividends or interest, or, in other

words, where the trust directed an accumulation, and the trustee used the funds, or employed them in his business, compound interest should be allowed.   This allowance is founded upon the ground of the gain, or presumed gain made by the use of the funds ; but when the circumstances forbid a presumption of gain, compound interest will not be allowed.   As there is no evidence in this case to show that John McKee used the trust funds, or employed them in his business or in any other mode by which he could have made gains, but failed in the performance of his trust only in respect of reinvestments, upon the case of *Ringgold vs. Ringgold,* we are of opinion that simple interest only should be allowed upon the trust funds, and that the Court below erred in allowing compound interest.   For this cause the decree appealed from will be reversed and the cause remanded in order that an account may be stated in conformity with the views expressed in this opinion.

*Decree affirmed in part and*
*reversed in part, and cause*
*remanded for further proceedings.*