MARGARET TAYLOR and JAMES TAYLOR, her husband vs. MARY HENRY and THOMAS BRUSCUP, Administrators of JOSEPH HENRY.

*Deposit in a Savings Bank in the name of the Depositor and another and the Survivor of them, subject to the order of either—Donatio inter vivos, and donatio mortis causa—Declaration of Trust of personal property—Parol proof thereof admissible—The character of such proof.*

On the 20th of April, 1866, J. H., then being in feeble health and contemplating a departure from home for the benefit of his health, made a deposit in a Savings Bank in Baltimore of $1850.00. In the depositor's bank-book, furnished him at the time, the account was opened and the money credited to J. H., and M H., his mother, and the survivor of them, subject to the order of either. Corresponding entries were made upon the books of the Bank. Sometime after the deposit J. H. went again to the Bank, accompanied by his sister, M. T., and had the name of his mother erased and that of his sister substituted; so that the account was made to stand in the books thus: "14096—J. H., M. T., and the survivor of them subject to the order of either. 1866, April 20, Rec'd eighteen hundred and fifty dollars—$1850." Of this amount J. H. drew out $50 on the 2nd of June, leaving a balance on deposit of $1800. After the death of J. H. that is on the 28th of September, 1866, M. T. obtained the bank-book from the trunk of the deceased where it had been constantly kept, and drew from the Bank the entire balance with the interest thereon. The deceased left no property other than this money, and by his will made sundry pecuniary bequests. On a bill filed by his administrators against M. T and her husband to recover back the money drawn from the Bank by her, it was HELD:

1st. That the right to the money depended upon the meaning and intention of the deceased in making the deposit in the form adopted, as gathered from the entry in the bank-book, and all the circumstances surrounding the deceased at the time.

2nd. That if the words "and the survivor of them" had been omitted in making the entry in the bank-book, the entry in the book would not be sufficient evidence of a complete and perfect gift.

Taylor *vs.* Henry and Bruscup, Adm'rs.

3rd. That those words, when taken in connection with those which precede and those which follow them in the entry, do not import either a gift *inter vivos* or a gift *causa mortis*.

4th. That to make a gift *inter vivos* perfect and complete, there must be an actual transfer of all dominion over the thing given by the donor, and an acceptance by the donee, or some competent person. for him; and it is essential to the validity of such gift that it should go into effect, that is, transfer the property at once and completely.

5th. That having by the terms of the entry retained in himself the power to draw out the money, the deceased did not divest himself of dominion and control over the fund.

6th. That as the mother's name had been erased and that of the sister inserted, so the name of the sister could have been erased without the slightest question of the brother's right to do so.

7th. That in order to render perfect a *donatio mortis causa*, three things must concur. 1st That the gift be made with a view to the donor's death. 2nd. That it be with a condition, either express or implied, that it shall take effect only on the death of the donor by a disorder from which he is then suffering, and 3rd. That there be a delivery of the subject of the donation.

8th. That the sister was not entitled to the money upon any principle of trust.

9th. That where a person intends to give property to another, and vests that property in trustees, and declares a trust upon it in favor of the object of his bounty, by such acts the gift is perfected and the author of the trust loses all dominion over it; and in such gifts of mere personal estate, the declaration of trust may be made and proved by parol, without the aid of writing.

10th. That even where the author of the gift retains the *legal* dominion over the subject of the gift in himself, but fully and completely declares himself to be trustee of the property for the purposes indicated, there he will be treated as trustee and the object of his bounty will be given the benefit of the trust.

11th. That in all such cases the declaration of the trust is considered in a Court of equity as equivalent to an actual transfer of the legal interest in a Court of law; and if the transaction by which the trust is created be complete, it will not be treated as invalid for want of consideration.

12th. That for the purpose of establishing such trust however, the evidence must be clear and unmistakable both of the intent and the execution of that intent.

13th. That the conclusion to be drawn from all the facts and circumstances of the case was, that the form of the entry in the bank-book was nothing more than a device or arrangement by the deceased to subserve a matter of convenience to himself, and that the sister was solely constituted an agent with power to draw money from the Bank to meet some supposed or apprehended emergency that might possibly arise in his absence from home.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken by the defendants from a decree of the Court below, requiring them to pay, or bring into Court to be paid, to the complainants the sum of $1818.33, with interest from the 28th of September, 1866, until paid, or brought into Court as aforesaid, together with the complainants' costs. The case is stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J.

*Andrew C. Trippe* and *Daniel M. Thomas*, for the appellants.

The only question properly before this Court is, whether *by the terms of the deposit*, the balance in bank at the death of Joseph Henry, belonged to Margaret Taylor by survivorship, or to his administrators.

The terms of the deposit, *"and to the survivor of them,"* are perfectly unambiguous, and can only mean that upon the death of either Joseph Henry or Margaret Taylor, the money then in bank would belong to the survivor; and this Court has already so decided. *Taylor vs. Bruscup & Henry, Adm'rs*, 27 *Md.*, 219; *Murray vs. Cannon, Adm'x*, 41 *Md.*, 477.

The distinction between this case and that of *Murray vs. Cannon*, 41 *Md.*, 466, upon which the Court below erroneously bases its decision, is obvious. In that case, the money was deposited in the one name of James Cannon, while here it was in the *joint names* of Joseph Henry

and Margaret Taylor, thereby creating a joint interest in the two, with an express reservation to the survivor; and the additional words, "*subject to the order of either,*" no more limited Mrs. Taylor's interest in the fund to one of agency than it did that of Joseph Henry.

If, therefore, the money in this case was payable to Mrs. Taylor, as survivor, it is immaterial whether she took it coupled with a trust or not. If she did, (which is not admitted,) the *cestuis que trust*, and not the administrators, are the proper parties to claim its enforcement. If she did not, of course the money is her own.

Nor can the complainants recover upon any supposed misunderstanding by the deceased of the terms used by him; for if the object of this proceeding was to correct a *mistake*, the bill should so have alleged, and in the absence of any such allegation, the question of mistake is not before the Court. *Wesley vs. Thomas*, 6 *H. & J.*, 28; *Ringgold vs. Ringgold*, 1 *H & G.*, 75; *McElderry vs. Shipley*, 2 *Md.*, 37.

In the case above cited of *Wesley vs. Thomas*, the Court say: "But it must be remembered that although relief can be had in equity against a deed or contract in writing, founded in fraud or mistake, still it is essential that the fraud or mistake should be alleged in the bill, as the ground and object of parol proof. It is essential on every principle of correct pleading that that which gives jurisdiction to the Court should be distinctly and substantially alleged."

Nor is the *evidence* offered to show a mistake, of that clear and conclusive character which alone would warrant the interference of the Court. *Watkins vs. Stockett*, 6 *H. & J.*, 445; *Showman vs. Miller*, 6 *Md.*, 485; *Katz vs. Moore*, 13 *Md.*, 566, 570, 573; *Beall vs Greenwade's Adm'rs*, 9 *Md.*, 185; *Beard vs. Hubble*, 9 *Gill*, 431.

In the first two of the above cases, the Court quote approvingly the language of Lord THURLOW, in *Irnham*

*vs. Child*, 1 *Brown's Chancery Reports*, 92 : "That the proof of a mistake should be established as much to the satisfaction of the Court as if it were admitted, and that the difficulty of doing this is so great, that there is no instance of its prevailing against a party insisting there is no mistake."

In the case of *Beard vs. Hubble*, 9 *Gill*, 431, the Court say: "The language of Lord Thurlow, in 1 *Brown's Chancery Reports*, 93, may be too strong; but in all such attempts as this, it has been required of the party seeking to be relieved, upon the ground of mistake, to produce, if not quite, almost incontrovertible proof; or, to use the language of a distinguished Chancellor, 'proof, clear and overwhelming.'"

The evidence relied on by the complainants in this case, if tested by the above standard, is wholly insufficient for their purpose.

Mr. Owens, then treasurer of the bank, and the only witness who testifies to the circumstances under which the deposit was made, shows that the deposit was made by Joseph Henry himself, and in the form directed by himself. And Courts of equity will not interfere where the transaction is such as the parties designed it to be. *McElderry vs. Shipley*, 2 *Md.*, 25 ; *Showman vs. Miller*, 6 *Md.*, 479, 485.

*John Warfield* and *Alexander H. Hobbs*, for the appellees.

On the facts there was *no gift*, as is pretended, from Joseph Henry, in his life-time, to Margaret Taylor; there was *no delivery* of the money ; Joseph Henry never relinquished dominion and control over it, and always retained the *locus penitentiæ*.

He retained the bank-book in his possession to the date of his death, kept the key of his trunk in which it was when he was in Baltimore, and, in fact, exercised unre-

stricted acts of ownership over the money as much as it was possible to do, and finally disposed thereof by last will and testament, with the knowledge of Mrs. Taylor, and without the slightest remonstrance, complaint or claim from her. *Murray vs. Cannon*, 41 *Md.*, 476; *Thompson vs. Dorsey*, 4 *Md. Ch. Dec.*, 149; *Hitch vs. Davis*, 3 *Md. Ch. Dec.*, 266; *Cox vs. Hill, assignment not under seal*, 6 *Md.*, 274; *Carey vs. Dennis*, 13 *Md.*, 1; *Nickerson vs. Nickerson*, 28 *Md.*, 332; *Gardner vs. Merritt*, 32 *Md.*, 82; 2 *Kent's Com.*, 438, *(marginal.)*

ALVEY, J., delivered the opinion of the Court.

The bill in this case was filed by the administrators of Joseph Henry, who died in September, 1866, against his sister, Margaret Taylor, and her husband James Taylor, praying for an account of certain moneys drawn from the Eutaw Savings Bank of Baltimore, by Margaret Taylor, after the death of her brother Joseph.

·It appears that, on the 20th of April, 1866, Joseph Henry, then being in very feeble health, and contemplating a voyage to sea or a sojourn in the South, for the benefit of his health, made a deposit in the Eutaw Savings Bank of Baltimore, of $1850. In the depositor's bankbook, furnished Henry at the time, the account was opened and the money credited to Joseph Henry and Mary Henry, his mother, and the survivor of them, subject to the order of either. Corresponding entries were made upon the books of the bank. Sometime after the deposit, Henry went again to the bank, accompanied by his sister Margaret Taylor, and had the name of his mother erased and that of his sister substituted; so that the account was made to stand in the books thus: "14096—Joseph Henry, Margaret Taylor, and the survivor of them, subject to the order of either.

1866, April 20th. Rec'd eighteen hundred and fifty dollars—$1850." Of this amount Joseph Henry drew

out $50, on the second of June, leaving a balance on deposit of $1800. After the death of Joseph Henry, that is, on the 28th of September, 1866, Margaret Taylor obtained the bank-book from the trunk of the deceased, where it had been constantly kept, and drew from the bank the entire balance, together with the interest to that date.

The bill alleges that the deceased never intended, by the deposit and entry in the bank-book, to donate or part with his right and dominion over the money ; but that the form of the entry in the bank-book was the result of an arrangement, as matter of convenience to himself, whereby he clothed his sister with power to draw the money, as he might need it, during his contemplated absence from home ; and to that extent Margaret Taylor was constituted his agent or trustee, but to no other intent or purpose whatever. In the answer of Margaret Taylor and her husband it is averred that, by the deposit, the deceased appropriated the money to the joint ownership of himself and his sister, Margaret Taylor, and to the survivor of them, with power to each of them, during their joint lives, to draw the money from the bank ; and that by the death of Joseph Henry, the whole title to and interest in the money, thus deposited, vested in Margaret Taylor by survivorship, according to the terms and effect of the deposit ; and that no further act was necessary to invest her with the title to the same.

It appears that the deceased was very anxious about the care and support of his aged mother, who survived him. He made some provision for her support during his lifetime ; and he seems to have been anxious that she should be provided for after his death. He made his will on the 6th of July, 1866, whereby he gave to his mother $400, to be placed in the hands of David Murray, his brother-in-law, for her benefit ; he gave to his sister Eliza Woolford, at whose house he died, the sum of $600 ; and he gave to his sister Margaret Taylor $300. He also gave to his

uncle $50.   He appointed no executor.   The will was admitted to probate soon after his death ; and it is not pretended that the testator had any other money or estate with which to gratify the bequests in his will than the money on deposit in the Savings Bank.

The whole question depends upon the meaning and intention of the deceased in making the deposit in the form adopted, as gathered from the entry in the bank-book, and all the circumstances surrounding the deceased at the time.

A large mass of testimony has been taken, showing a great deal of family talk and dissension in regard to this money ; but of all the evidence produced, there is only a small part of it that is of any material value in deciding the case

It is quite certain that if the words, "and the survivor of them," had been omitted in making the entry in the bank-book, the case would have been free from all question or difficulty.   The case of *Murray vs. Cannon*, 41 *Md.*, 466, would then be quite decisive in establishing the proposition that the entry in the bank-book would not be sufficient evidence of a complete and perfect gift.

But do those words, when taken in connection with those which precede and those which follow them, in the entry, import either a gift *inter vivos*, or a gift *causa mortis?*

That they do not import a gift *inter vivos*, would seem to be clear, upon the most obvious construction.   To make such gift perfect and complete, there must be an actual transfer of all right and dominion over the thing given by the donor, and an acceptance by the donee, or some competent person for him ; and it is essential, to the validity of such gift, that it should go into effect, that is, transfer the property, at once and completely ; for if it has reference to a future time when it is to operate as a transfer, it is but a promise without consideration, and cannot be enforced, either at law or in equity.   Until the gift is thus made

perfect, a *locus penitentiœ* remains, and the owner may make any other disposition of the property that he may think proper. *Pennington vs. Gittings*, 2 *Gill & John.*, 208; *Cox vs. Sprigg*, 6 *Md.*, 274; *Nickerson vs. Nickerson*, 28 *Md.*, 332; *Hitch vs. Davis*, 3 *Md. Ch. Dec.*, 266.

Here, the deposit was in the joint names of the deceased and his sister, and the survivor of them, but subject to the order of either. Having thus retained the power to draw out the money, the deceased did not divest himself of dominion and control over the fund. He could have drawn out every dollar the day after the deposit, or at any time up to the moment of his death, and applied it in any manner he might have thought proper. It is not contended that the sister had the least right or interest in the money before the deposit; nor is it contended that she acquired any interest therein otherwise than by the supposed gift of the brother; and the only evidence relied on to support the *factum* of the supposed gift, is the form of the entry in the bank-book. But, as will be observed, there are no terms in the entry that import of themselves an actual present donation by the brother to the sister; and the dominion retained by the brother over the fund enabled him to displace and utterly destroy all power conferred upon the sister in respect to the fund. As the mother's name had been erased and that of the sister inserted, so the name of the sister could have been erased, without the slightest question of the brother's right to do so. The sister never exercised any power or control over the fund during the life of the brother. It was only after his death that she attempted to assert right and dominion over it; and then by the supposed right of survivorship.

But, if the supposed gift was not perfect and irrevocable during the life of the donor, it could become so after his death only as a *donatio mortis causa;* and from the form of the entry, and the facts of the case, it is impossible that the transaction can be allowed to prevail as a *donatio mortis causa.*

In order to render perfect a *donatio mortis causa*, three things must concur: 1. That the gift be made with a view to the donor's death: 2. That it be with a condition, either express or implied, that it shall take effect only on the death of the donor by a disorder from which he is then suffering; and 3. That there be a delivery of the subject of the donation.

Now, it is true, the deceased was, at the time of the deposit in the bank, suffering from the disease of which he died; but it no where appears that the deposit was made, and the particular form of entry adopted, with a view to and in expectation of death from the existing disorder. And, as we have seen, the entry of itself does not import a gift, and there was no such delivery of possession of the subject of the supposed donation, as the law makes necessary to perfect either a *donatio inter vivos* or a *donatio mortis causa*. In making a gift *causa mortis*, the donor does not part with the whole interest, except only in the particular event of death; and it is of the essence of such a gift, that it shall not otherwise take effect; and it remains subject to his revocation at any time before the event of death. But, nevertheless, it is essential, in order to give effect to the donation, that the deceased should, not only part with the possession, but also with the present dominion over the subject of the gift, subject only to subsequent revocation; and in this case, as we have seen, there was neither possession nor dominion surrendered by the deceased, at any time before his death. *Bradley vs. Hunt,* 5 *Gill & J.,* 58; *Reddel vs. Dobree,* 10 *Sim.,* 244.

Nor can the claim of the appellant, Margaret, be sustained upon any principle of trust.

The cases upon this subject establish the doctrine to be, that where a person intends to give property to another, and vests that property in trustees, and declares a trust upon it in favor of the subject of his bounty, by such acts, the gift is perfected, and the author of the trust loses all dominion

over it; and in such gifts of mere personal estate, the declaration of trust may be made and proved by parol, without the aid of writing. And the cases go the length of maintaining that where the author of the gift retains the *legal* dominion over the subject of the gift in himself, but fully and completely declares himself to be trustee of the property for the purposes indicated, there he will be treated as trustee, and the object of his bounty will be given the benefit of the trust. In all such cases, the declaration of trust is considered in a Court of equity as equivalent to an actual transfer of the legal interest in a Court of law ; and, if the transaction by which the trust is created be complete, it will not be treated as invalid for want of consideration. *Kilpin vs. Kilpin,* 1 *M. & K.* 520 ; *McFadden vs. Jenkyns,* 1 *Phill.,* 153 ; *Hughes vs. Stubbs,* 1 *Hare,* 476 ; *Collinson vs. Pattrick,* 2 *Keen,* 123. The principle of these cases, to the extent we have stated it, has been fully recognized and adopted by this Court, in the cases of *Cox vs. Sprigg,* 6 *Md.,* 274, and *Smith & Barber vs. Darby,* 39 *Md.,* 268. For the purpose of establishing such trust, however, the evidence must be clear and unmistakable both of the intent and the execution of that intent. But in this case, there is no evidence that reasonably tends to establish such trust. There is no reliable evidence of declarations of the deceased, either in writing or by parol, that tends to prove that he designed the money on deposit exclusively for his sister, or that he intended to give her any real interest in the money by inserting her name in the bank-book, apart from the entry itself. On the contrary, looking to all the circumstances surrounding the deceased, and the particular transaction in question, the presumption is strongly against any such intent on the part of the deceased. His declarations, conduct, and dealing with the subject-matter, all go irresistibly to show that he never did and never intended to part with or surrender his absolute control and dominion

Taylor *vs.* Henry and Bruscup, Adm'rs.

over the fund, during life. Indeed, in his then low and feeble state of health, without other means of support, and being utterly unable to work, it would have been folly in the extreme for him to have placed the fund in such position as to render it even possible that all his beneficial control and dominion over it might at once be destroyed, and he left destitute and dependent. And yet this is what it is said he did in effect, upon the supposition that he intended that his sister should have the absolute right, at any time after the deposit, to draw out the money and apply it to her own exclusive uses and purposes, irrespective of his will or desire upon the subject. And, upon the supposition of a complete and perfect declaration of trust, he would, also, have denuded himself of all power or control over the fund, inconsistent with the trust declared ; for it is well settled, that where a trust is once completely and effectually created, whether by a formal instrument, or by parol, where a parol declaration of the trust is sufficient, the trust is beyond revocation, by the simple act or declaration of the donor. *Smith & Barber vs. Darby*, 39 *Md.*, 278 ; *Kilpin vs. Kilpin*, 1 *M. & K.*, 531 ; *Adlington vs. Cann*, 3 *Atk.*, 151.

The conclusion to be drawn, and indeed the only rational conclusion that can be drawn, from all the facts and circumstances of the case, is, that the form of the entry in the bank-book was nothing more than a device or arrangement by the deceased, to subserve a matter of convenience to himself; and that the sister was simply constituted an agent with power to draw money from the bank to meet some supposed or apprehended emergency that might possibly arise in his absence from home.

This being the conclusion at which we have arrived, it results that the decree of the Court below must be affirmed.

*Decree affirmed.*

(Decided 3rd May, 1878.)