MARY E. MURRAY *vs.* ELIZABETH CANNON, Administratrix of JAMES CANNON.

*Parties incompetent to Testify under the Act of 1868, ch. 116—Imperfect Gift.*

A bill was filed by an administratrix to obtain possession of a book of deposit, and certain sums of money credited therein, alleged to have been deposited in a Savings' Bank by her intestate in his life time, to which as his administratrix she claimed to be entitled. The bill charged that a daughter of the intestate together with her husband had been active parties in withholding the book of deposit and resisting the payment by the bank to the complainant, of the money deposited. That they had been as thus charged, the answers and proof in the case abundantly established. The bill prayed that they might be required to answer. HELD:

That these defendants were not *nominal parties merely*, and were therefore incompetent to testify under the Act of 1868, ch. 116.

An account was opened in a Savings' Bank to the credit of "James Cannon, subject to his order, or to the order of Mary E. Cannon," his daughter; and money from time to time was thus deposited. Upon the death of James Cannon, Mary E. Cannon claimed that her father, in his life time, had given her the book of deposit with the money credited therein, to be held by her in trust for herself, and her brothers and sisters. The only mode in which money could be changed from one person's account to another's in the bank was "by a payment of the one account and a new deposit in another account." Upon a bill filed by the administratrix of James Cannon claiming the money in bank as belonging to his estate, it was HELD:

That the deceased had not parted with the legal dominion and control over the money standing in his name in the bank, because it was there subject to his order, or *the order of his daughter;* nor did the delivery of the book of deposit constitute a delivery of the money, and the complainant was therefore entitled to it as of the estate of her intestate.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case filed by the appellee, charged that she was the widow of James Cannon, late of

Baltimore city, who died intestate in the month of April, 1871, leaving the complainant, his widow, and five surviving children, viz: Florence, an infant daughter of the complainant, and four children by a former marriage, viz: Louisa J., the wife of Wm. W. Kone, Mary E., the widow of Oliver P. Murray, James Cannon and Susie Cannon, and a grandson, Louis Arnett; that on the 12th of May, 1871, letters of administration on the estate of the said intestate, were issued to the complainant by the Orphans' Court of Baltimore city; that in the course of her administration she discovered that her intestate had deposited money in the Savings' Bank of Baltimore, to the amount of about $4000, and that it was standing in his name and to his credit at the time of his death; that in some way to the complainant unknown, the book of deposit had been taken possession of by William W. Kone and Louisa, his wife; that the complainant had applied to the bank to pay her the money, but the bank had refused to pay it, unless she should produce the book of deposit; that Kone and wife had refused to give up the book; that thereupon, on the 14th of May, 1871, the complainant applied to the Orphans' Court, by petition, for an order requiring Kone and wife to surrender to the complainant, as administratrix, the book of deposit which they had concealed and withheld; that in their answer to said petition, filed 22nd of May, 1871, they stated that before the filing of said petition, they had delivered the book to Mary E. Murray, and they denied that the money deposited in the bank belonged to the intestate's estate, but averred that it had been given by the intestate in his life-time to Mary E. Murray, upon certain trusts; that Mary E. Murray on the 20th of June, 1871, also answered the petition, and averred that Kone and wife had given her the book, and that the money deposited in the bank had been given to her by the intestate in his life-time upon certain trusts. The bill denied that Kone and wife had delivered the book

to Mary E. Murray before the petition was filed, and averred that the money belonged to the estate of the said intestate.   The bill also alleged that the Orphans' Court dismissed the petition, holding that it had not jurisdiction to determine the question of title to the said property ; that the bank still refused to pay the money to the complainant on the claim of Kone and wife, and Mary E. Murray, that they, together with the persons by them mentioned in their answers aforesaid, were the only persons entitled to the same, and the bank could not safely assume to decide upon said inequitable claim.   The bill prayed for a decree requiring that the book of deposit should be delivered and the money in the Savings' Bank paid to the complainant, as administratrix of the said intestate.   William W. Kone and Louisa, his wife, Mary E. Murray and the Savings' Bank of Baltimore were required to answer.   The separate answers of Kone and wife, and Mary E. Murray averred that the book of deposit was given to the latter by her father before his marriage with the complainant, and that at the time the account was opened to the credit of "James Cannon, subject to his order, or to the order of Mary E. Cannon ;" that there was some money already entered in the book at the time it was given to Mary E. Murray, and that the intestate gave her that money and such money as might thereafter be credited in the book, in trust, for herself and her brothers and sisters equally ; that other money was given to Mary E. Cannon (who intermarried with Oliver P. Murray,) by the intestate, to be deposited in the bank, and that she continued in possession of the book from the time she got it, until her marriage and removal to Portsmouth, Virginia, in the spring of 1862, when, at the request of the intestate, she left the book with Mrs. Kone, the intestate saying, that it would be more convenient to leave it with Mrs. Kone, so that she might deposit such other money as he might give; that while it was in Mrs. Kone's posses-

sion, the intestate, from time to time gave her other sums of money for Mrs. Murray, and told her to deposit them in bank and have them credited in the book for her. It was alleged by Mrs. Kone, that she retained possession of the book delivered to her, until she returned it to Mrs. Murray, after the death of the intestate. It was also alleged that the intestate never at any time asked for the return of the book, or claimed the money. Mrs. Murray claimed that she was lawfully entitled to the book of deposit, and to have the money therein credited, amounting, with the credits of interest to April, 1871, to the sum of $3809.54, for the uses and purposes stated by the donor.

The Savings' Bank answered, alleging that it had no knowledge of the facts stated in the bill, except as to the deposit with the bank in the name of James Cannon, and in reference to that, averred that an account stood on their books thus: "James Cannon, subject to his order, or to the order of his daughter, Mary E. Cannon," and that on the 1st of April, 1874, the balance to the credit of that account was $4688.78. The bank assented to such decree as the Court might pass.

A commission was issued to take testimony. Among others, Kone and wife were examined as witnesses, on behalf of the defendants, having previously executed a release and assignment of all their interest in the money to Mrs. Murray. The complainant excepted to their testimony. They filed a petition setting forth the release and assignment, and asking that the bill be dismissed as to them; and an agreement of counsel was filed by which the admissibility of their testimony was to be decided as if it had been given after the action of the Court on their petition. The Court took no action on the petition, but held that Kone and his wife were incompetent to testify for their co-defendants, not being "nominal parties merely" under the Acts of 1864 and 1868. The Court, (PINKNEY, J.,) thereupon passed a decree requiring the

Savings' Bank of Baltimore, on the receipt of the proper vouchers, to pay to the complainant as administratrix, the money in bank, to the credit of her intestate.

From this decree the defendant Mary E. Murray, appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON and MILLER, J.

*Charles Marshall* and *William A. Fisher*, for the appellant.

The evidence of Kone and wife was admissible. They were made parties defendant *after* the complainant had been apprised by the proceedings in the Orphans' Court, that they had returned the book of deposit, which she seeks to recover possession of by this suit, to Mrs. Murray. The allegations of the bill against them are: 1st. That they had not delivered the book to Mrs. Murray. 2nd. That the bank still refused to pay her the money, because of the claim made to it by Kone and wife, and Mrs. Murray.

These allegations are all that the complainant makes to justify making Kone and wife defendants, and these allegations are expressly denied by them. Not a tittle of proof was offered by the complainant to sustain these allegations. If they were not true, or what is the same thing, if they were not proved, Mrs. Murray was the only real defendant (besides the bank,) and the bill should have been dismissed as to Kone and wife, as having no interest in the *controversy as to the possession of the book.* Their testimony as to the important fact that the intestate never asked or had possession of the book from the time he gave it to Mrs. Murray, was therefore competent.

The release and assignment of Kone and wife to Mrs. Murray, of all their interest in the fund, made them competent. Apart from the Acts of 1864 and 1868, such a

release and assignment would remove the objection that the witness is interested, especially if he be not as in this case, liable for costs.

Was the gift of the money by Cannon to his daughter a complete gift *intervivos*? Apart from the evidence of the Kones, is there proof in the case that the intestate parted with the money in his life-time, so as to make a complete gift? The bill alleges that the complainant had no knowledge of the deposit in the Savings Bank, *until after she administered*. This fact goes to show that the intestate was not in possession of the book of deposit. The book shows that the money was made subject to the order of James Cannon or of Mary E. Cannon. Mrs. Murray was married in 1861, so that the entry in the book must have been made before her marriage. The form of the credit in the book, made the money payable to either James Cannon or Mary E. Murray. Either could have drawn it under such an entry. *Wright vs. Cogswell*, 1 *McLean*, 471 ; *Spaulding vs. Evans*, 2 *McLean*, 139.

But in order to enable either to draw the money, it was absolutely necessary that the person offering to draw it should have the book. Notwithstanding then the joint control over the fund arising from the form of the credit, if the intestate put the book out of his possession, so as to disable himself from drawing the money, he made a complete delivery of the money to Mrs. Murray.

Now, does the evidence, apart from that of the Kones, show that James Cannon in his life-time did so deliver the book? or part with the possession of it, as to effectually prevent him from drawing the money? The bill admits that at the death of Cannon, the book was not found in his possession, and that the complainant, his wife, knew nothing of the deposit until after his death. The bill is filed against Mrs. Murray, and is an admission that the book was in her possession.

The bill does not charge that the book was *improperly* obtained, but only that in some manner to the complainant *unknown*, the book had been taken possession of by Kone and wife. It is not alleged that they took possession of it after Cannon's death, nor that they took possession of it wrongfully. They were therefore in possession of the book, by admission, and are not charged with having obtained that possession improperly. The Court will not presume that they obtained it improperly.

The possession of the book by Mrs. Murray or her agents is entirely consistent with the form in which the credits are entered. As the money was made payable to her, her possession of the book is only to be explained in the absence of evidence to the contrary, as a possession for the purpose of enabling her to draw the money.

If the intestate parted with the possession of the book *to one who, with the book in her possession,* was the only person in the world who could draw the money, he effectually delivered the money to her, and as effectually deprived himself of all control of it, as if he had caused the credit to be changed to the name of Mrs. Murray alone, unless there be some proof that he retained the right of control over the book.

Notwithstanding the form of the credit in the book, if the intestate in his lifetime delivered the book to Mrs. Murray absolutely, and with no intent to reclaim or resume possession himself, he made a complete and perfect gift to her, (whatever trusts he might have annexed to it,) just as effectually as if the money had been originally entered to her sole credit. With the book she could draw the money ; without it he could no more have drawn it than he could have drawn the money of any other depositor.

We have then the fact of such a possession of the bank book by Mrs. Murray in her father's lifetime, as coupled with the form in which the book was kept, gave her abso-

lute and complete control over the money, exclusive of the intestate, and we have the fact that near the time he ceased giving more money to be deposited in the Savings' Bank, he also closed his account in the First National Bank, and gave what was there to the complainant. In the absence of all proof to the contrary, this establishes a complete gift of the money in the Savings' Bank.

If on the other hand the evidence of the Kones be admitted, they prove the gift of the book to Mrs. Murray on certain trusts, by the intestate in his life-time; that after giving her the book, he never reclaimed it; that he gave Mrs. Kone money for Mrs. Murray, to be deposited in the bank, and that he repeatedly declared that the money was given to her. Such possession of such a book is a complete and perfect gift. *Walker vs. Rostron*, 9 *M. & W.*, 411; *Wilson vs. Carson*, 12 *Md.*, 54; *Cooper vs. Burr*, 45 *Barbour*, 33; *Allen vs. Cowan*, 23 *N. Y.*, 504; *Penfield vs. Thayer*, 2 *E. D. Smith*, 305.

*Perley R. Lovejoy* and *Henry Stockbridge*, for the appellee.

The testimony of the respondents Kone and wife was properly excluded as incompetent. *Act of* 1868, *ch.* 116. Under the provisions of that Act they are certainly incompetent, unless they can be shown to be "nominal parties merely" to this suit. And this cannot be done from the evidence in the cause. And they were not made "nominal parties merely," or competent witnesses by the assignment of their interest in the money involved in the suit.

It is not on the ground of interest that they are disqualified. The disqualification of interest was already removed by the Act of 1864, ch. 109: but by the same statute these respondents are especially disqualified on other grounds. *Cannon vs. Crook*, 32 *Md.*, 486; *Denison vs. Denison*, 35 *Md.*, 381.

The bill is not against those interested in the money, else all the children must be made parties. The administratrix represents the interest of all the children alike. Her suit is against the bank, and all those combining to withhold money from the estate. The assignment by Kone and wife of their interest in the money, does not answer the charges of the bill as to them. They are still *principal* parties, and not "nominal parties merely," and under the Act of 1868 their testimony was rightly excluded.

If the testimony of Kone and wife be excluded, there is no proof at all of a gift of the money, and it belongs to the estate. It is proved by an officer of the bank that the money stood in James Cannon's name on the books of the bank, at the time of his death, and that Mary E. Cannon could exercise no control over it afterwards; and the answer of the bank by its solicitor adopts and re-affirms that testimony.

The Courts have fully sustained that position of the bank. The money goes to the one in whose name the deposit stands, and not to an alternate drawer, or to an adverse holder of the book. *Gardner vs. Merritt,* 32 *Md.,* 83; *Howard vs. Savings Bank,* 40 *Vt.,* 600.

These cases show that in law the giving of the book is not a "*delivery*" of the money; and Capt. Cannon certainly had not lost "*dominion*" over it, for he could have drawn every dollar of it at any time before his death, and after the giving of the book, even if the book had been lost or withheld from him. Delivery and parting with the dominion over property, is necessary to constitute a valid gift. *Cox vs. Sprigg,* 6 *Md.,* 284; *Carey vs. Dennis,* 13 *Md.,* 18; *Nickerson vs. Nickerson,* 28 *Md.,* 332; *Gardner vs. Merritt,* 32 *Md.,* 82; *Pennington, Admr. vs. Gittings,* 2 *G. & J.,* 217, 218; *Bradley vs. Hunt,* 5 *G. & J.,* 58; *Miller vs. Jeffress,* 4 *Grattan,* 480; *Carelton vs. Lovejoy,* 54 *Me.,* 447; *Brinckerhoff vs. Lawrence,* 2 *Sandf. Ch.,* 401, 406; *Little vs. Willetts,* 37 *How. Pr.,* 490; *Doty vs. Wil-*

*son,* 47 *N. Y.,* (2 *Sickels,*) 585 ; *Duncan's Admrs. vs. Duncans,* 5 *Littell,* 12, 13 ; *Beech vs. Keep,* 18 *Jur. Pt.* 1., 971 ; 2 *Kent's Com.,* 439.

An alternate drawer has only the power of an attorney or agent, which ends with the life of the principal ; and even while it exists, it is only " a control for the benefit of those to whose benefit the money was delivered," (*i. e.*, in this case for the benefit of Capt. Cannon ;) as was held in *Gardner vs. Merritt,* 32 *Md.,* 83. So also in *Carey vs. Dennis,* 13 *Md.,* 18, Solomon Carey was decided to be the agent, not of the alleged donees, but of Levin Carey, the *donor,* and " that such agency was revoked by the death of Levin Carey."

BRENT, J., delivered the opinion of the Court.

There are two questions presented upon this appeal. The first is the admissibility of the testimony of Kone and wife, who are made defendants by the complainant's bill ; and the second is the gift of certain sums of money, in the Savings' Bank of Baltimore, by James Cannon in his lifetime, to the appellant, Mary E. Murray.

The bill is filed by the administratrix of James Cannon, and unless Kone and wife are " nominal parties merely," they are not competent witnesses under the *Act of* 1868, *ch.* 116. They are not excluded upon the ground of interest, and their release dated the 15th of April, 1873, can have no effect in making them competent. The object of the bill is to obtain possession of the book of deposit of certain sums of money alleged to have been deposited in the Savings' Bank of Baltimore, by James Cannon, in his life-time, to which the complainant, as his administratrix, claims she is entitled. It is substantially charged in the bill, that Kone and wife, as well as the appellant, have been active parties in withholding this book, and resisting the payment over of the money to the estate. That they have been, the answers and proof in the case abundantly

establish.     If wrong it is as alleged in the bill, they are parties to. it, and the complainant has sufficient reason to insist that they should be held as parties defendant.     It cannot therefore be claimed that they are *nominal parties merely*, and as such, competent to testify under the Act of 1868.     As this is the only ground upon which they could be admitted as witnesses, their testimony must be excluded.

The grounds, as presented by this record, upon which the appellant claims the money in the Savings' Bank, are the entry in the book of deposit, and the possession of the book during the life-time of the intestate, James Cannon.

The entry in the book of deposit, which corresponds with the account upon the books of the Savings' Bank, is as follows : " James Cannon, subject to his order, or to the order of Mary E. Cannon." Mary E. Cannon afterwards became the wife of a Mr. Murray, and is the same person who is appellant in this case under the name of Mary E. Murray.     To perfect a gift, the delivery of a thing intended to be given is indispensable.  · " There must be a parting by the donor with *the legal power and dominion* over it.     If he retains the dominion, if there remains to him a *locus penitentiæ*, * * there cannot be a perfect and legal donation, and that which is not a good and valid gift in law cannot be made good in equity." *Patterson's Admr. vs. Gittings' Exr.*, 2 *G. & J.*, 217; *Nickerson vs. Nickerson*, 28 *Md.*, 327.     The money in question was deposited in the Savings' Bank to the credit of James Cannon, and so continued up to the time of his death.     He retained dominion and control over it by the very terms of the account with the Bank, and could at any time have drawn it out, or revoked the power given to Mary E. Cannon to obtain it upon her own order.     If she had drawn out any portion of the money, she would have drawn it out as.the money of James Cannon, acting in the matter as his agent, and by virtue of a then existing authority

derived from him. This agency was revoked by his death, *Carey vs. Dennis,* 13 *Md.,* 18, and the Bank properly refused to recognise it after that period. But we consider the question as settled by the case of *Gardner, Guar. et al. vs. Merritt,* 32 *Md.,* 82. There money deposited in the Savings' Bank in the names of minor children was held to belong to them, and not to the estate of the grandmother, although the deposits were made by her, and the account, opened with the bank, stated them to be subject to her order. Certainly it cannot be insisted after the decision in that case, that James Cannon had parted with legal dominion and control over money standing in his name in the bank, because it was there subject to his order or *the order of Mary E. Cannon.* On the contrary, it was his as absolutely as it would have been hers, if the deposit had been made in *her name, subject to the order of James Cannon,* and had so continued in bank up to the time of his death.

Nor does the possession of the book of deposit by Mrs. Murray, or her agent, affect the result in this case. Its delivery to her cannot be said to operate as a delivery to her of the money in question, or to deprive James Cannon of dominion and control over it. This branch of the case is within the principle decided in *Ward vs. Turner,* 2 *Vesey Sen.,* 431. There the bill was to obtain a transfer of South Sea annuities, upon the ground that the receipts for them had been delivered to the complainant's testator, the donor saying, "I give you these papers, which are receipts for South Sea annuities, and will serve you after I am dead." This was held not to be a perfected gift, because the delivery of the receipts was not a delivery of the annuities, as they could only be delivered by a transfer or something equivalent. So in this case, the delivery of the book of deposit did not constitute a delivery of the money, which it is claimed was the thing intended to be given, because its delivery could not be effected in that way.

Mr. Richardson, assistant treasurer at the bank, says the only mode, in which money can be changed from one person's account to another's in the bank, "is by a payment of the one account, and a new deposit in another account." And of this the intestate, James Cannon, seems to have been fully aware, for when he wishes to make a donation of the money he had on deposit in the First National Bank of Baltimore, he adopts this plan.

We do not think the proof in this case is sufficient to establish a perfected gift of the money in question to the appellant by James Cannon in his life-time. It must therefore be brought into his estate, and as the decree below so directs, it will be affirmed.

*Decree affirmed.*

(Decided 3rd March, 1875.)