MARY A. DOUGHERTY and CATHARINE REILLY *vs.* ELIZABETH MOORE, &c., JOHN L. MCDONALD and CLYMER WHYTE, Administrators, and others.

*Gifts inter Vivos—Invalid gift.*

A written statement in a pass book with a Savings Bank by a husband that, in consideration of natural love and affection for his wife, he gave her all the money credited, or to be credited, to him in the book, he continuing to make deposits, and to draw from the fund from time to time, as he saw fit, does not constitute a valid gift by the husband to the wife of the money on deposit.

APPEAL from the Circuit Court of Baltimore City.

The Court below (DENNIS, J.,) passed a decree adjudging that certain money on deposit in the Eutaw Savings Bank of Baltimore, belonged to the estate of Lawrence McDonald, deceased, and a further decree adjudging that certain other money on deposit in the Savings Bank of Baltimore, belonged also to the estate of said McDonald. From these decrees the present appeal was taken; the

Dougherty and Reilly *vs.* Moore. *et al.*

appellants, widows, being children of Sarah McDonald by a former husband. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Fetter S. Hoblitzell,* for the appellants.

*Frederick W. Story,* and *Edward Otis Hinkley,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

This is a controversy in regard to the title to two funds, or sums of money, held on deposit by the Eutaw Savings Bank of Baltimore and the Savings Bank of Baltimore, and claimed respectively by the administrator of the wife and the administrator of the husband.

McDonald, the husband, opened an account in the Eutaw Savings Bank in 1864, and running down to 1887, when he died. The account was opened in his own name, and so continued till the 19th of February, 1868, when the name of his wife was added; and thereafter the entry in the pass book of the Bank and in the ledger of the Bank read,

"Lawrence McDonald,

"Sarah McDonald and the survivor, subject to the order of either."

On the 4th January, 1876, the following entry was also made: "In consideration of my natural love and affection for my wife, Sarah McDonald, I give to her all the money belonging to me credited or to be credited in this book, and I direct the same be paid to her, and her receipt shall be good for the same."

"Lawrence $\overset{\text{His}}{+}$ McDonald."
$\quad\quad\quad$ mark.

After these entries were made, McDonald continued to make deposits from time to time, and to draw money on account of the same as his wants or convenience required; the sum of six hundred dollars being drawn by him two days only before he died.

His wife also drew money from time to time, upon her presenting the pass book to the Bank, and having the several amounts credited thereon as required by the rules and regulations of the Bank.

The husband and wife died on the same day, the wife surviving her husband little more than one hour.

The question and the only question it seems to us is, whether there was a valid gift by the husband to his wife of the money held on deposit by the Bank.

All agree that to constitute a valid gift between living parties, or gifts *inter vivos*, as they were distinguished by the civil law, there must be a delivery of the subject-matter of the gift, with the intent on the part of the donor to transfer the right of property to the donee, or to some one for his use. The donor must renounce, and the donee must acquire the title and interest in the property given. So long as there is *a locus penitentiae in* the donor, the right to change his mind, to modify, or revoke it, the gift is incomplete. As was said by GIBBS, C. J., in *Bunn vs. Markham*, 7 *Taunton*, 214:

"There is no case which decides that the donor may resume the possession and the donation continue." Nor will the mere fact of possession in itself be sufficient, but it must appear that such possession was acquired with the consent of the donor, and with the intent on his part to relinquish all right and interest in the subject of the gift, and making it the property of the donee. These are familiar principles about which there can be no contention.

"If the thing be not capable," says Chancellor KENT, "of *actual delivery*, there must be some act equivalent to

Dougherty and Reilly *vs.* Moore, *et al.*

it. The donor must part not only with the possession, but with the dominion of the property." 2 *Kent Comm.*, 439. Here the subject of the gift is money on deposit in a savings Bank, and it is admitted there was no actual delivery of the money itself by the husband to the wife. If so, the question then is whether the act or acts of the husband are in a legal sense equivalent to an actual delivery of the money. We shall not stop to consider whether an assignment in writing and delivery to a donee of a pass book of a savings Bank by the donor, with the intention to give and vest in the donee the immediate right and interest in the money held on deposit, will constitute a valid gift of such deposits. In some States it has been held that such an assignment and delivery will vest in the donee a valid title to the money. It is sufficient to say there was no delivery by the husband to the wife of the pass book of the Bank in this case, with the intention on his part of renouncing all interest in the deposits, and of transferring to her the absolute title to the same. In the first place, there was no delivery of the pass book itself, to the wife. It was kept, it appears, both before and after the entries of the 19th of February, 1868, and 4th January, 1876, in the bureau drawer in the dining room, within the reach and under the control of the husband. Much less is there any proof of its delivery to the wife with the intention on the part of the husband of renouncing all interest in the money. On the contrary, years after these entries, and in fact during his life, he continued to draw money and appropriate it to his own use, showing beyond question that he never meant to relinquish his right and dominion over the deposits. Now, if there was a complete gift of the money to the wife, if in fact it belonged to her, then he had no right to appropriate it to his own use. One cannot give property to another and then take it back. Once establish

the gift, and the property belongs to the donee, but there can be no gift in law so long as the donor retains the control and dominion over the subject of the gift. A mere promise to give, however explicit, will not be sufficient, for the reason that the promise being made without consideration, it cannot be enforced. *Pennington, Adm'r vs. Gittings' Ex'r,* 2 *G. & J.,* 208; *Murray vs. Cannon, Adm'x,* 41 *Md.,* 466; *Taylor vs. Henry and Bruscup, Adm'rs,* 48 *Md.,* 550.

Although the husband in this case did not mean to relinquish his right to use the money on deposit during his life, he did mean that whatever remained in the Bank, at the time of his death, should go to his wife if she survived him. But these entries cannot operate as a testamentary disposition of property, because they are not executed as the law requires. We are of opinion, therefore, that the money held on deposit by the Eutaw Savings Bank belongs to the administrator of the husband, and not to the administrator of the wife. The claim of the administrator of the wife to the money on deposit in the Savings Bank of Baltimore, rests on no better ground. The entry in the pass book here reads:

"Lawrence McDonald, subject also to the order of Sarah McDonald." In other words, the money deposited belonged to him, but was subject to the order of himself or his wife—She had the authority to draw money, and all checks drawn by her were, it appears, signed "Sarah McDonald for Lawrence McDonald."

The subsequent entry of the 4th of January, 1876, "in consideration of my natural love, &c." is precisely the same as in the pass book of the Eutaw Savings Bank, the effect and operation of which we have already considered.

For the reasons already assigned we are of opinion there has been no valid gift by the husband to the wife of the

money on deposit in this Bank and the decrees below must
therefore be affirmed.

*Decrees affirmed.*

(Decided 12th June. 1889.)