## THE METROPOLITAN SAVINGS BANK AND BERNARD REED, EXECUTOR, *vs.* JAMES MURPHY AND ANOTHER, ADMINISTRATORS OF MICHAEL MURPHY.

*Savings Bank Deposit to the Order of Husband or Wife, Balance Payable to the Survivor—Gifts—Testamentary Disposition.*

A man deposited a sum of money in a Savings Bank in the names of himself and wife, "subject to the order of either, the balance at the death of either to belong to the survivor." After opening this account the husband made no withdrawals therefrom. *Held,* that upon his death the bank was justified in paying such deposit to the surviving wife, and that the administrator of the husband had no claim therefor against the bank.

After a party had kept an accout in a Savings Bank for some years in his own name he directed that the amount then to his credit should be transferred to a new account in the name of himself and wife, subject to the order of either, the balance to belong to the survivor. At the time of opening the first account he had designated on a book kept by the bank his wife as the person to whom the money should be paid in the event of his death, unless otherwise disposed of. *Held,*

1st. That the two accounts were distinct and separate transactions.

2nd. That the first account was not in the nature of a testamentary disposition.

Appeal from the Orphans' Court of Baltimore County. On July 8, 1873, Michael Murphy opened an accouut with the Beneficial Fund Society, a corporation whose name was afterwards changed to "The Metropolitan Savings Bank," and deposited the sum of $520. He received a pass-book, No. 1485, on the first page of which was printed the statement: "It is agreed that this account is opened subject to the by-laws printed on the first and last pages of this book." On the last page of each pass-book is printed By-Law No. XIII, which reads as follows: "A book shall be kept at the office, in which every depositor shall be at liberty to appoint some person or persons to

whom, in the event of his or her absence or death, the money shall be paid, unless otherwise disposed of." A book was kept at the bank in compliance with the by-law, and when any new account was opened the depositor had the privilege, if he desired to avail himself of it, of designating the persons or person who should receive the money, in the event of the depositor's death. Upon opening this account Murphy wrote the name of his wife, Ann Murphy, in the book under the column headed, "Name of person or persons to whom, in the event of absence or death, the money shall be paid, unless otherwise disposed of."

On March 5, 1885, when the amount standing to his credit on the books of the bank was $1,841.45, Murphy directed a new account to be opened in the names of himself and wife, and the survivor, transferring to it the above-mentioned balance. He surrendered the old pass-book and received a new one, No. 7437, headed as follows :

*Dr.* METROPOLITAN SAVINGS BANK,

*In Account with* MICHAEL MURPHY and ANN MURPHY,   *Cr.*

| It is agreed that this account | Subject to the order of either. |
|---|---|
| is opened subject to the by-laws printed on the first and last pages of this book. | The balance at the death of either to belong to the survivor. |

1885.

Mch. 5. Balance %c
          1485......$1,841  45
    "         Twenty-five
            Dollars...   25  00

It did not appear that a similar entry was made in the ledger of the bank. After this new account was opened, additional deposits were made from time to time, but no money was withdrawn until after Murphy's death. Murphy died March 2nd, 1888, and it appears that account No. 7437 continued in the name of his wife and himself until December 1st, 1892, when the bank and Mrs. Murphy closed and cancelled account No. 7437 and had a new account opened, No. 13,801, in the name of the said Ann Murphy.

In February, 1895, the Metropolitan Savings Bank and Bernard Reed, executor of Ann Murphy, filed a petition in the Orphans' Court of Baltimere County, setting forth that in January, 1895, letters of administration on the estate of Michael Murphy had been granted to the appellees, on the theory that Murphy had died intestate; that the bank had that day filed in Court the last will and testament of Murphy, under which the estate sought to be administered by the appellees was bequeathed to Ann Murphy; that Ann Murphy had died leaving a will by which the petitioner, Reed, was appointed executor.    The prayer of the petition was that the letters of administration granted to the appellees be revoked and an administrator *c. t. a.* be appointed to administer the estate of Michael Murphy.    The paper referred to in this petition as Murphy's will, was a page from the book kept at the bank in which Murphy, upon opening his first account in 1873, had designated Ann Murphy as the person to whom, in the event of his death, the money deposited should be paid.    The answer of the appellees denied that this paper was the last will of Michael Murphy. The Court below dismissed the petition, and the petitioners appealed.

The cause was argued before BRYAN, McSHERRY, BRISCOE, ROBERTS and BOYD, JJ.

*Harry M. Benzinger* and *Alfred Jenkins Shriver* (with whom were *James S. Calwell* and *M. W. Offutt* on the brief), for the appellants.

The three questions presented to this Court for determination, if the Court should hold that every question of the case is on this appeal reopened for argument, are: 1. Is the paper-writing in question, it having been executed July 8th, 1873, and the testator having died March 2d, 1888, a valid will of personal property?    2. Was the entry of March 5th, 1885, whereby the name of Ann Murphy was added to the account to that of Michael Murphy, a disposition of the fund on deposit?    3. Had the Orphans' Court jurisdic-

tion to decide whether or not the fund in dispute had been disposed of or not?

The requisites of a will of personal property executed before August 1st, 1884, when the Act of 1884, ch. 293, which made the requisites of wills of personalty and realty the same, went into effect, were:    1. The intention to dispose of property after death.    2. That this intention was reduced to writing during the decedent's lifetime.    3. That the writing be complete on its face or that its imperfections be duly accounted for.    It was not necessary that the writing be signed, or sealed, or attested, or in testator's handwriting, or that it dispose of all the testator's property, real or personal, or that it name an executor.    *Visitors* v. *Bruce*, 1 H. & McH. 510, and cases in note.

Any instrument which is *in its nature* ambulatory and revocable during life, and whose operation depends upon the death of its maker, whatever be its form, is a will.    It may on its face be a power of attorney, a deed of gift, an order on a savings bank, a personal letter, an entry in a diary, etc.

The entry now in dispute was a validly executed will of personalty before August 1st, 1884.    The Act of 1884, ch. 293, required certain formalities as to execution.    But the second section of the same Act provides that it should not affect or be applicable in anywise to any will or bequest executed prior to August 1, 1884.

The account No. 7437 was a combination of the previous account and not a new one.    In *Taylor* v. *Henry*, 48 Md. 550, a precisely similar entry was declared of none effect when no actual delivery of the fund has taken place. The entry there was as follows: " Joseph Henry, Margaret Taylor, and the survivor of them, subject to the order of either."    It was held by JUDGE ALVEY " that the form of the entry that was in the bank book was nothing more than a device or arrangement by the deceased to subserve a matter of convenience to himself, and that the sister (Margaret Taylor), was simply constituted an agent to draw money from the bank to meet some supposed or apprehended

emergency that might possibly arise in his absence from home." Also see: *Dougherty* v. *Moore,* 71 Md. 251 ; *Cannon* v. *Murray,* 41 Md. 466.

Independently of all other questions raised in this case, it is submitted that the order of the Orphans' Court should be reversed for lack of jurisdiction. The ground of the Court's refusing probate to the instrument, as will appear by reference to the opinion of the Court, was that the entry of July 8th, 1873, operated as a will but for the entry of March 5th, 1885.

In other words, the Court thereby determined the title to the property in dispute, and in so doing exceeded its jurisdiction. To decide questions affecting title to or disposition of property, belongs to Courts of law or equity. The Orphans' Court having affirmatively found this paper writing to be testamentary in character, should of necessity and for that reason alone, have admitted the same to probate. Probate decides merely on the *factum* of the instrument.

*James L. Lindsay* and *John S. Ensor* (with whom was *John T. Ensor* on the brief), for the appellees.

If Michael Murphy had the " liberty," according to bank by-laws, to sign the name of "Ann Murphy," in the column now offered as a will, he just as much reserved the right to " otherwise dispose of" his funds. *Kelleher* v. *Kernan,* 60 Md. 442. Suppose the Court finds (as we by no means admit) that it was a disposition of property to take effect only after death, if the property is not disposed of during the lifetime of deceased, then the only question left, according to conceded law and fact is : Is the Court satisfied, from the evidence and all the circumstances in. the case, that Michael Murphy did during his lifetime " otherwise dispose of" the funds in question? 1st. Date of alleged writing and opening of account July 8th, 1873. This account was opened in the name of " Michael Murphy," and subject to his order alone, as by reference to bank-book No. 1485, will show. 2d. March 5th, 1885 (during

his lifetime), he returns his pass-book No. 1485, entitled Michael Murphy, and requests and orders Mr. Ryan to change his account, so that he might give another party some rights. *Murray* v. *Cannon*, 41 Md. 475.

Accordingly, on that day, the bank, by his directions, authority and request, closed and balanced the old book and account under the names of Michael Murphy and Ann Murphy, subject to the order of either, the balance at the death of either to belong to the survivor. He lived several years after his reopening of said account, and what money has been drawn by either of these parties has been drawn by the said Ann Murphy, who could not have drawn it as it first stood and not until March 5th, 1885, when it was put subject to her order. For obvious reasons we assert that this was a most vital alteration in the account, and a most certain and legal change in the status of the first account. The by-laws of said bank, XIII, contains these very words : " Unless otherwise disposed of." *Murray* v. *Cannon*, 41 Md. 478. If the change in the account was authorized, as Mr. Ryan testifies, and the by-laws and signature-book of said bank gave Murphy the right to dispose of the funds, then why was it not entered on the ledger as it was on the pass-book when he authorized it to be done. The fact is, the pass-book is true and the bank is in fault in not having its ledger to correspond.

ROBERTS, J., delivered the opinion of the Court.

The appeal in this case is taken from an order of the Orphans' Court of Baltimore County, refusing probate to an instrument claimed to be the last will and testament of Michael Murphy, deceased. There is no controversy as to the facts appearing in the record, which can be briefly stated as follows : Michael Murphy became a depositor in the Metropolitan Savings Bank of Baltimore City, on July 8th, 1873, and from time to time thereafter made deposits therein of various sums of money. On ths 5th of March, 1885, after he had, at intervals, drawn from said bank different

sums of money, there remained to his credit with said bank, a balance of $1,841.45. This balance was, by his direction, transferred to a new and different account in said bank, which was opened in the names of Michael Muphy and Ann Murphy (his wife), and at the request of said Michael, which was agreed to by said bank, there was written at the head of the account of said Murphy and wife in the bank-book No. 7437, with the appellant the following: "*It is agreed that this account is opened subject to the by-laws printed on the first and last pages of this book, subject to the order of either. The balance, at the death of either, to belong to the survivor.*"

The wife survived her husband, and at the time of his death, which occurred March 7th, 1888, the balance with said bank to the credit of the joint account of Murphy and wife amounted with certain accretions of interest, to the sum of $2,482.67. This sum the appellant, in pursuance of the terms of its contract with Murphy and wife, paid over to the survivor, Ann Murphy. The only question which we are now called upon to decide is, Had the bank authority in law to make such payment? It is the claim of the appellees that the bank acted without authority in making such payment, and the converse of the proposition is maintained by the executor and residuary legatee of Ann Murphy, now deceased. It is contended by the appellant bank that the two accounts in said bank—that in the name of Michael, and that in the joint names of himself and wife—constituted in fact but one and the same continuing account, and both having been opened with said bank prior to the passage of the Act of 1884, ch. 293, requiring certain formal pre-requisites in the execution of wills of personalty, they are entitled to be considered and construed as testamentary papers ; and that the balance in said bank to the joint credit of the husband and wife at the time of his death passed under the terms of the alleged will to the wife as the survivor. It is claimed upon the part of the appellees that when the individual account in said bank in the name of said Michael was closed, it no longer had any connection

with or relation to the joint account in the names of the husband and wife, and became thereby wholly disconnected with this controversy.   We concur in this view, and think that the proper construction to be placed upon the two accounts in their supposed relationship is that the closing of the one and the opening of the other left them separate and distinct.   And if this be so, there is but one consequence which follows, and it is this, the joint account in the names of the husband and wife ceased to possess a single testamentary attribute, as the entry at the head of the joint account was not, nor was the account itself written or opened until after the Act of 1884, ch. 293, had gone into effect. So that we entertain no doubt about the legal effect of these accounts as testamentary papers.   We are clearly of the opinion that the testamentary character claimed by the appellants as adhering to the first and second accounts by reason of their being one and the same continuing paper is without force and untenable.   It is too plain for controversy that the accounts are separate and distinct, and in no just sense testamentary.   We do not, however, concur in the view taken at bar of the case *Dougherty* v. *Moore,* 71 Md. 248, as concluding the question raised by this appeal.   The facts of that case differ very materially from the case presented in the record of this case.

At the death of the husband the bank paid over to the wife the balance of the account, and in doing so carried out in good faith the strict letter of its contract. · This is not a case where the husband retained possession and control of the account in bank, and continued to draw therefrom such sums as his wants might indicate, as was the case in *Dougherty* v. *Moore, supra,* and in many other cases.   Nor is the language controlling the ultimate disposition of the joint account in this case in any respect similar to that of *Dougherty* v. *Moore.*   The bank's instructions in opening the account were that said account shall be subject to the order of either husband or wife, and at the death of either the balance shall *belong* to the survivor.

It is neither the object of the law nor the duty of the Court to seek by narrow and technical construction the means of invalidating a contract clearly expressive of the intention of the contracting parties, and we think nothing could be clearer than the object and intention of the parties to the contract in the language employed by them in opening the joint account.

Whilst we have not been able to recognize the accounts in evidence as testamentary papers, we entertain no doubt as to the legal effect and meaning of the entry at the head of the joint account. It is quite true that the title to the deposits referred to in the first account was originally vested solely in the husband, Michael, and it was his privilege to make such disposition of the same as he thought proper. He had the indisputable right to enter into any contract with the appellant that would accomplish his purpose in securing to his wife the protection which these savings deposits might give to her. After opening said joint account the husband never drew one farthing from the bank on that account, which from March 5th, 1885, to the date of his death, March 2d, 1888, remained undisturbed, save by the addition of some interest items, which were made by the officers of the bank.

The property in controversy consisted of deposits in the appellant bank, which by the direction, authority and request of the said Michael, assented to by the appellant, was entered in the books of said bank to the credit of himself and wife with the understanding and contract with the bank endorsed thereon as hereinbefore stated. The parties were *sui juris*, capable of contracting and having actually contracted the law exacts fulfillment, which the appellant has done ; and we do not think after it has fully executed its part of the contract, it ought now to be required to pay to the appellees the money which it promised to pay and had already paid to the appellant's testatrix, unless some legal requirement can be established demanding its payment to the appellee.

We have given the most careful consideration to the various cases which have been passed upon by this Court bearing any analogy to the facts of this case, but we have found no authority controverting the conclusions at which we have arrived. This transaction partakes somewhat of the nature of an equitable assignment, looking to the interest of the parties rather than to matter of form, and the question of the survivorship depended solely upon mere contingency. But looking at this controversy from whatever point we may, we think the appellant paid rightly to Ann Murphy the balance standing to the joint credit of herself and husband at the time of his death. We will, for· the reasons assigned, affirm the order of the Court below..

*Order affirmed with costs and petition dismissed.*