# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 25, 1910.

ALEXANDER H. ROBERTSON, ADMINISTRATOR D. B. N. C. T. A. OF JOSEPH E. CLAGETT,

VS.

NICHOLAS MARKEY ET AL.

*Bernard Carter* and *Alex. H. Robertson* for plaintiff.

*Edwin G. Baetjer* and *Alfred Bagby, Jr.,* for defendant executor.

NILES, J.—

The object of this case is to determine the ownership of a deposit in the Eutaw Savings Bank of Baltimore, and also to determine the ownership of certain shares of stock of the Alabama Home Building and Loan Association.

First: As to the Savings Bank deposit.

On April 10, 1902, Doctor Joseph E. Clagett had on deposit in the Eutaw Savings Bank, evidenced by Book No. 88373 the sum of $1,612.62. On the same date, Rose C. Markey had on deposit in the Eutaw Savings Bank, evidenced by Book No. 96739, the sum of $3,871.27.

On that date Doctor Joseph E. Clagett withdrew the whole of his deposit, namely, $1,612.62, and made a new deposit in Book No. 162492 in the name of "Joseph E. Clagett, Rose C. Markey, subject to the order of either, the balance at the death of either to belong to the survivor."

On the same date, Rose C. Markey drew the whole of her deposit, namely, $3,781.27, and re-deposited it in Book No. 162,493, in the name of "Rose C. Markey, Joseph E. Clagett, subject to the order of either, the balance at the death of either to belong to the survivor."

On the same date, Rose C. Markey stated to the President of the Eutaw Savings Bank in substance that, inasmuch as each of the two deposits would belong to the survivor, she did not see any reason for keeping two pass books and withdrew the $3,781.27 from Book No. 162,493, where it had just been deposited, and re-deposited it in Book No. 162,492, so that, on the close of that day, namely, April 10, 1902, there was a deposit of $5,393.89 to the credit of "Joseph E. Clagett, Rose C. Markey, subject to the order of either to belong to the survivor," which deposit was made up, as just stated, of $1,612.52, which had previously been the individual deposit of Joseph E. Clagett, and $3,781.27, which had prior to April 10, 1902, been the individual deposits of Rose C. Markey. From that time until April 13, 1908, there were 23 separate deposits, amounting to $9,399.72, the larger deposits being those of

Sept. 30, 1903.............. $1,288.60
May 27, 1904................ 1,507.65
June 4, 1904................ 512.80
June 26, 1904............... 659.77
March 31, 1904............. 3,397.90

the other deposits being smaller sums none of them as much as $250.

During the same time, interest was added, amounting to $1,735.25.

During the same time, there were 32 withdrawals from the account, four of them, namely:

Oct. 3, 1904................ $ 150.00
Apl. 3, 1905................ 1,500.00
May 1, 1905................. 50.00
Sep. 28, 1905............... 50.00

or a total of............... $1,750.00
upon receipts signed by J. E. Clagett, and 28 withdrawals upon the receipt of Rose C. Markey, namely:

Nov. 19, 1904............... $ 75.00
Dec. 19, 1904............... 50.00
Jan. 27, 1905............... 1,500.00
Feb. 21, 1905............... 160.00
June 1, 1905................ 100.00
June 19, 1905............... 50.00
Oct. 26, 1905............... 50.00
Nov. 21, 1905............... 50.00
Dec. 6, 1905................ 50.00
Dec. 21, 1905............... 50.00
Jan. 10, 1906............... 50.00
Feb. 12, 1906............... 50.00
Apl. 3, 1906................ 50.00
Apl. 11, 1906............... 50.00
May 2, 1906................. 40.00
June 12, 1906............... 50.00
November 13, 1906.......... 100.00
December 12, 1906.......... 40.00
January 10, 1907........... 50.00
January 16, 1907........... 50.00
April 8, 1907............... 50.00
April 18, 1907.............. 50.00
May 14, 1907................ 50.00
June 10, 1907............... 160.00
October 1, 1907............. 50.00
December 20, 1907.......... 50.00
April 1, 1908............... 60.00

amounting altogether to.. $3,185.00

leaving a balance of $11,653.86 which, together with such interest as may have accrued since, is the fund in dispute.

The claimants are the plaintiff, who is the personal representative of Joseph E. Clagett, who died leaving Rose C. Markey surviving him, and the defendant, the personal representative of Rose C. Markey, now also deceased.

The theory of the plaintiff is, that, so far as the $1,612.62, which was the first deposit in this account, is concerned, this sum was the sole property of Doctor Clagett, and that, as shown by the evidence, all the deposits subsequently made in the account, with the exception of the deposit of $3,781.-27 (which he admits was unquestionably the property of Mrs. Markey, and to which he makes no claim) were so deposited out of funds belonging exclusively to Doctor Clagett; that, therefore, no title in any of the fund, except the $3,781.27 could be acquired by Mrs. Markey, except by a valid gift inter vivos; and that there is no evidence of such a gift.

It will be seen, that the fundamental premise upon which is based the bril-

liant and forceful argument of the distinguished counsel for the plaintiff, is that, although the funds in the savings bank, which had been previously the individual property of Doctor Clagett and Mrs. Markey and deposited in their individual names respectively, were withdrawn from their individual accounts and placed in one account headed "Joseph E. Clagett, Rose C. Markey, subject to the order of either, the balance at the death of either to belong to the survivor" there was, in fact, no legal change of ownership accomplished by this transaction at the bank, but that the funds continued in the eye of the law exactly as they were before—the individual property of each of the two parties, according to the amounts of their respective contributions—and, legally speaking, all those transactions which occurred on April 10, 1902, had no effect whatever.

The more I examine exactly what this, which I call the "fundamental premise" of the plaintiff's argument means, the more am I impressed with the exceptional characteristics which such an account would possess.

It would not be a joint deposit at all, but a deposit of $1,612.62 belonging to one person and $3,781.27 belonging to another person, each of these persons having the power, but not the right, to draw both his own money and the money of the other during the lifetime of both, provided he could obtain possession of the bank book. All the words in the heading of the book would not only be without any effect whatever, but would be positively misleading. Interest upon the fund, although credited in the book upon the whole amount would have to be divided between the owners in common according to the amount of their respective interests, and credited accordingly. All the deposits made by one of these owners must be credited to his share, and all the deposits made by the other owner to her share. All the withdrawals made by the other owner should be charged against her. At the death of either, his or her personal representatives would be entitled to the original amount deposited by his decedent, together with all subsequent deposits, and all interest accrued thereon, less the amount withdrawn by his decedent. It will occur at once, that this would be a very singular way in which two people of average business ability

would seek to confuse and almost inextricably mingle the property of each with that of the other.

But in this case, the evidence on which the rights of the parties can be worked out according to that theory shows with singular clearness the difficulty of maintaining this contention. There were filed in the case, as before stated, receipts s i g n e d by Doctor Clagett for $1,750, or more than the amount of the fund deposited by him on April 10, 1902. There have also been filed in the case, as before stated, receipts signed by Mrs. Markey amounting to $3,185, which is only about $600 less than the amount deposited by her on April 10, 1902. There is no evidence whatever in regard to any of these withdrawals, except one of $1,500, made April 3, 1905, and, as to this, the evidence shows that it was not only drawn by Doctor Clagett, but devoted by him to purposes of his own. I can see, therefore, absolutely nothing in the evidence to show why, in logic, under the plaintiff's theory, these withdrawals should not be charged up against the parties to the extent shown by their receipts respectively. Again as to the deposits, the evidence shows, as before stated, that during six years, there were 23 separate deposits, but there is absolutely nothing in the account, and absolutely no direct evidence in the case, to show whose property, as a matter of fact, any particular deposit was.

Counsel for plaintiff, feeling the force of these facts as to the withdrawals, whilst suggesting that perhaps he might claim that the withdrawals made by Mrs. Markey should be charged against her, waived all claim in this regard, and charged all these withdrawals to the account of Doctor Clagett; but this, it seems to me, is directly in the teeth of the logic of his contention. Feeling the force of these facts as to the deposit made by the parties, counsel for the plaintiff rely upon the evidence that Mrs. Markey had no property given to her mother or relatives other than her father, and was dependent upon what her father or her husband may have given her. They also rely upon the evidence that Doctor Clagett turned a good deal of his property into cash. Upon this evidence they argue that such sums as Mrs. Markey might have received from her father or husband

could not have been considerable, while Doctor Clagett had sufficient money to make these deposits. They then make the claim that every cent shown to have been deposited in this account was money belonging to Doctor Clagett. But the undisputed evidence is that Mrs. Markey's husband was a prosperous business man, who gave his wife an allowance of $25 per month for her personal needs for a part of the time, gave her money whenever she asked for it at all times and that Doctor Clagett made gifts amounting to at least $3,000, to her sister during this period, and, of course, might have given as much or more to his daughter who was nearer to him and took care of him. Moreover, there is a fact shown in the evidence absolutely inconsistent with the hypothesis that Mrs. Markey could have had no money of her own to deposit in this account, and this fact is that, as shown by her original bank book "Defendant's Exhibit F. G. E. No. 10," Mrs. Markey had between June 27, 1889, and April 10, 1902, actually saved and deposited in bank the sum of $3,781.27.

As to the interest always credited upon the account as a whole, and which amounts, as before shown, to $1,735.25, counsel for plaintiff offers no suggestion as to how that can be proportionately divided, but simply claim the whole of it as belonging to Doctor Clagett.

Now, of course, it might be possible, for the Court to hold that two individuals, each with a saving bank account, should agree to draw out the whole amount of their accounts and deposit those amounts in their joint names, subject to the order of either, the balance at the death of either to belong to the survivor; that they should each draw on that account from time to time without keeping any record as between themselves of the amount so drawn; that one of them should make more than $9,000 worth of deposits without anything to indicate that it was he and not the other party who made these deposits; that interest should be credited upon the whole amount of deposit without any division of interest as between the two parties; and yet that these two funds still continued to be the individual accounts of the parties, just as if they were deposited in two separate accounts. But it would take very strong

evidence to prove such a state of things.

In this case I can find no such strong evidence. On the contrary, the whole testimony seems to indicate that Doctor Clagett took his own money, and Mrs. Markey took her own money, and each, in consideration of the action of the other, deposited their money in a joint account which should belong to them practically as partners, with beneficial right of survivorship, upon which either could draw without accounting to the other for the amount so withdrawn, and which, at the death of either should belong to the survivor. To this effect is the direct evidence of Lindsay Bawal (p. 69), that Doctor Clagett told him that that was exactly what was done, using some such words as "We have mutually agreed to open a joint account, payable to the order of either and, at death, would go to the survivor absolutely."

We have also Mrs. Markey's declarations made to Mrs. Gray (pp. 17,23, 24), put in evidence by the plaintiff, and made during the running of the account, that she had no money which she could dispose of by will, when according to plaintiff's contention she had in the account mentioned something like $4,000, but when, provided her interest in the bank account was no longer a several interest, but such a joint interest as Dr. Clagett mentioned, she spoke the the exact truth.

This, perhaps, unnecessarily long statement of the facts has been made in order to bring out how I have arrived at the conclusion that seems to me unquestionable, namely, that the idea that the account opened April 10, 1902, was one in which the interests of Doctor Clagett and Mrs. Markey were legally separate and belonged to them individually, breaks down:

First—As opposed to the evidence.

Second—As inherently without probability; and

Third—As absolutely impracticable as a basis for the determination of this case.

Ruling out, therefore, this contention of the plaintiff, and assuming that, by mutual agreement, the account of April 10, 1902, was to be of the nature of a quasi partnership account, subject, during the lifetime of both, to the order of either, and the balance,

at the death of either, to go the survivor, is there anything in the law to prevent such an agreement being made and enforced? I can see possible objection to it. If two people for sufficient consideration make an agreement to open and continue an account in that way, it seems very clear that their intention must be effectuated by the Courts, and not frustrated.

See Wilks vs. Burns, 60 Md. 64, 70.

Augsbury vs. Shurtlik, 180 N. Y., 138, 147.

All the cases in regard to gifts of savings bank deposits, and the learning and nice points which are applicable to such gifts, have, of course, no bearing upon the question, and if I am correct in the foregoing, the case, so far as this bank account is concerned, must be determined in favor of the defendant.

Could I make the assumption, which is urged by the plaintiff, and consider all but the original deposit by Mrs. Markey as the property of Doctor Clagett, it would then be impossible for me to hold that a gift inter vivos had not been made of this deposit to Mrs. Markey.

In regard to a gift inter vivos of a savings bank deposit three things must concur:

First—The title, as evidenced by the heading of the book, must be consistent with the ownership of the donee.

Second—There must be an intention to confer ownership on the donee.

Third—There must be a completion of the investiture of the donee with the title by delivery of the book so complete that the donor is unable by any act of his to regain the control of the fund for himself. In other words, no locus poenitentiac can remain.

Taking up the Maryland cases, known as the Savings Bank cases, the cases of Pennington vs. Gittings, 2 G. & J., 208, and Nickerson vs. Nickerson, 28 Md. 327, although the subject matter was not a Savings Bank Deposit, but Bank Stock in one case, and a slave in the other, lay down the general rule, which has been referred to and applied in the other cases.

In the case of Gardiner vs. Merritt, 32 Md., 83, the three elements concur, viz: the form of deposit showing ownership, intention, and delivery according to the circumstances of that particular case, and the gift was held complete.

In Murray vs. Cannon, 41 Md. 466, the first element named above was lacking. The form of the account was inconsistent with the intention to give ownership to the donee, and in such case the mere possession of the book could not confer title.

In Taylor vs. Henry, 48 Md. 550, the form of the account was insufficient, there was no intention to give, and no abandonment of control by the donor. All three elements being lacking. the alleged gift was, of course, held to be incomplete.

In Second National Bank vs. Wrightson, 63 Md. 81, the first element was lacking. The terms of the Certificate of Deposit did not indicate joint-ownership, and there was no gift.

In Dougherty vs. Moore, 71 Md. 248, there was no intention to make a gift in presenti, and no delivery of possession. These two elements being lacking the alleged gift was held invalid.

In Metropolitan Savings Bank vs. Murphy, 82 Md., 314, the question was not as between the rights of the parties inter sese, but only as between the parties and the Bank; and the case cannot, therefore, be considered a direct authority. See Gorman vs. Gorman, 87 Md. 350, 351.

In Baker vs. Hedrick, 85 Md. 645, the wife being held to be the owner of the money, there was no intention found on her part to confer the property upon the husband.

In Gorman vs. Gorman, 88 Md. 338, 345, the intention to confer ownership and the delivery were both lacking.

In Savings Bank vs. McCarthy, 89 Md., 194, there was lacking the intention to confer ownership and delivery, there being clear proof that the depositor never relinquished control over the deposits.

In Whalen vs. Milholland, 89 Md., 199, the form was sufficient, but there was a question as to the intention, and the delivery was lacking.

In Milholland vs. Whalen, 89 Md., 212, the form was sufficient, the intention was proven, there was a sufficient delivery by virtue of the trust clause, and the gift was sustained.

In Brewar vs. Bowersox, 92 Md., 567, the form of the entry was held

sufficient, and there was dominion given to the wife, and the proof was held sufficient to indicate that the dominion of the wife and the form of the entry must be considered rightful; or, in other words, there was an intention to confer ownership and the gift was sustained.

In Jones vs. Crisp, 109 Md., 30, there was no delivery with intent to pass title at the time.

It seems clear from all these cases, that wherever there is a form of entry upon a savings bank book, which indicates ownership in the donee, and where it is proven that it was the intention of the parties that the donee should have such ownership, and where there is a delivery sufficient to pass title at the time, and to deprive the donor of the power to take again the subject of the gift for his own use, the gift is held complete; and this does not only seem to be clear on the authorities, but seems clear upon the elementary principles of law.

Now, in this case, we have the form of entry, which is very different from the entry in Murray vs. Cannon, 41 Md., 466, and which does import ownership.

Second—We have the intention.

Considerable evidence was taken by the plaintiff to show that Doctor Clagett expressed himself as intending that all his property should belong to his daughter during her life, with power in her to use and spend it, but that the balance, upon her death should go to his sister. But all such expressions have no effect as against the positive evidence of what his intention really was, which is furnished by Mr. Hayden, by Mr. Bawsel and by Mr. Bagby.

Third—The evidence is clear that Mrs. Markey was in actual possession of the book; that she kept it in her trunk; that Doctor Clagett had taken it out from his papers and given it to her to keep, and that, in the presence of Mr. Bagby, Doctor Clagett went through a formal ceremony of taking from Mrs. Markey's possession the bank book and giving it to her, with the understanding that "after such delivery, Doctor Clagett had no ownership in the account."

As against all this, the plaintiff alleges that there was no delivery, because on September 28, 1905, Doctor Clagett appears to have receipted for the withdrawal of $50. Twenty-two times after that, withdrawals were made on the receipt of Mrs. Markey. There is no accurate identification of the time when the $50 withdrawal was made by Doctor Clagett, whether before or after the interview with Mr. Bagby.

It is proven that Doctor Clagett had a stroke of paralysis in 1903, and that, in this very September, when the $50 was withdrawn, he was practically confined to a room in the second story of his house (Bagby, p. 77). Non constat, that Mrs. Markey did not take his receipt signed by him to the bank and draw the money herself from the bank book in her possession, or that they did not go together, she still retaining the book. Altogether the mere fact that, at about the time when the dominion of the book was formally transferred to Mrs. Markey, who has retained possession of it ever since, there was one withdrawal of $50 on Doctor Clagett's receipt, does not weigh much as against all the evidence of the actual delivery of the book to Mrs. Markey in such a way that Doctor Clagett thereafter could not have regained possession of the subject of his gift.

I, therefore, hold that even should the theory of the plaintiff be adopted, to the effect that the account was not a joint one, but a several one, which was the subject of gift, it has nevertheless, been proven that the gift was made and made irrevocably.

Second—As to the stock of the Alabama Home Building and Loan Association.

The agreed statement of facts shows that Joseph E. Clagett was the owner of 200 shares of this stock; that on February 3rd, 1905, he executed on the back of his certificates, representing his shares, the following assignment under seal "For value received, I hereby assign the within stock and certificates to my daughter, Rose C. Markey, which transfer effective at my death." On April 4th, 1907, Joseph E. Clagett and Rose C. Markey, by assignment in writing endorsed on the back of the certificates, assigned said certificates, as follows: "For value received, we hereby assign the within stock and certificate to Joseph E. Clagett and Rose C. Markey, joint owners, subject

to the order of either and at the death of either to belong to the survivor." This assignment was executed under seal by the parties, the certificates were surrendered, the transfers were duly made on the books of the corporation, new certificates were issued "to them in accordance with said assignment," and said certificates stood in said joint names in accordance with said assignment until the death of Joseph E. Clagett. After the death of Joseph E. Clagett, Rose C. Markey, as such survivor, by endorsement, transferred said certificates to herself in her individual name, and new certificates were issued to her.

It is claimed by the plaintiff that this statement of facts shows that the stock was the property of Doctor Clagett, and that there is nothing in the statement to prove that there was a perfected gift of this property, or any interest therein, to Mrs. Markey; the reservation "subject to the order of either" reserving to Doctor Clagett a locus poenitentiac, and there being nothing in the statement to show that he ever parted with the actual possession of the certificates.

Mrs. Markey's executor does not claim under the first assignment but, in regard to the last assignment, he sets up the claim.

1. That it was not a gift but a transfer upon a valuable consideration, the words "for value received" prima facie importing a consideration, and there being no evidence to the contrary.

2. That even should the transfer be held to be without consideration, it is in the nature of a voluntary settlement, fully executed, and the reservation of the power of revocation is not only not inconsistent with, but very appropriate to, such a settlement.

3. That, considering it as a mere gift, the fact that, under the agreed statement, the certificates were issued "to them in accordance with assignment," and that,. after the death of Doctor Clagett, Mrs. Markey," as such survivor," transferred the certificates to herself, indicates that the gift inter vivos was completely made and possession transferred according to the terms of the gift.

1. It does not seem to me that, in the light of all the evidence in the case, this transfer ought to be considered as in the nature of a sale, or as being made for a valuable consideration, simply because of the words found in the transfer, "for value received."

2. It does not seem to me that this transfer of stock is in the nature of a voluntary settlement, fully carried out; and the only basis of the claim of invalidity made by the plaintiff is, that the power of revocation was reserved.

Upon this point I hold with the defendants, that a power of revocation reserved in a voluntary settlement is not inconsistent with such settlement. Rogers vs. Rogers, 94 Md., 573; Brown vs. Mercantile Trust Co., 87 Md., 383, 364.

3. Certificates of stock are not the stock itself, but merely evidence of its ownership. Cook on Stockholders, Sec. 14.

The only way in which delivery of stock can be made is by transfer upon the books of the company, and when such transfers have been made on the books of the company, the relation of membership between the corporation and the old stockholder is destroyed with all its incidents, and a new and original relation created with the new member free from all antecedent obligations." Pennington vs. Gittings, 2 G. & J., 208; Balto. Retort & Brick Co. vs. Mali, 65 Md., 93.

It must follow then that whichever party held the evidence of title after the last transfer made before Dr. Clagett's death the stock itself had been delivered in the "only way" in which delivery could be made, and that there was a new and original relation created between the company and "Joseph E. Clagett and Rose C. Markey, joint owners." Possession of a savings bank book and power to draw out the fund is important as bearing upon the question whether or not there has been a delivery of that particular species of property. But here the delivery having been made, and the new relation having been complete, it could make no difference as between the joint owners, who had the evidence of title any more than in the case of a deed of land to joint owners, and although one joint owner may have power given him to convey the joint property, it seems clear that he must not so use that power as to dissipate or waste the joint property or appro-

priate it in a manner inconsistent with the joint ownership.

Milholland vs. Whalen, 89 Md., 219.

A decree will be signed in accordance with this opinion, but directing the costs to be paid from the fund.