# CIRCUIT COURT OF BALTIMORE CITY.

Filed February 15, 1902.

IDA E. SNADER

VS.

FIELDER C. SLINGLUFF, EXR.

*T. Rowland Slingluff* and *R. Lee Slingluff* for F. C. Slingluff, executor.

*Norman S. Heindel* for George R. Gaither, Jr.

*Rhodes & Rhodes* for Emma L. Gibbons et al.

*Geo. R. Gaither, Jr.*, for Ida E. Snader et al.

STOCKBRIDGE, J.—

The proceedings in this case, subsequent to the decree of interpleader, are for the purpose of establishing the respective rights of the parties hereto, with regard to a fund of $3,500—which stands in the place of certain Mobile & Ohio Railroad Company bonds.

Prior to the year 1884, these bonds had been the property of a certain Samuel Engler, formerly of Carroll County, but at that time a resident of Paris, France. As nearly as can be gathered from the evidence, either in the year 1884, or prior thereto, the bonds out of which this fund arises had been placed in the hands of David Roop, late of Carroll County, and this fund is now claimed upon the one side, by the children of Solomon P. and Mary E. Engler, under a supposed declaration of trust in their favor, and on the other by Fielder C. Slingluff, the executor of Samuel Engler, the original owner thereof.

The claim of the children of Solomon P. and Mary E. Engler rests, primarily, upon a supposed declaration of trust signed by David Roop, the trustee, on the 14th day of October, 1884, and is in this language:

"MELVILLE, Oct. 14, 1884.

"This is to certify that I have received from Samuel Engler, transferred in my name the following Mobile and Ohio 1st Mtg. R. Rd. bonds: Nos. 6485, 6486 and 6487 of $1,000—face value each. And one bond, No. 724, of $500, face value, coupons attached at 6 per cent., beginning Dec. 1, 1884, to be held in trust for children of S. P. & Mary E. Engler. The interest collected to be remitted to Saml. Engler. The above conditions to be observed and carried out until otherwise ordered and directed.

"$3,500—in all. DAVID ROOP."

And secondarily, upon certain letters of Samuel Engler, written at various times, and which have been filed as exhibits in the case. If the declaration of Roop and the letters of Samuel Engler, either separately or when taken together, amount to a valid and effectual declaration of trust, then the fund belongs to the plaintiff, on the other hand, if the declaration of trust set up by the plaintiffs is ineffectual in any particular, then the fund belongs to the executor of Samuel Engler.

The law in such cases is clear and well defined. It is always a question of fact, whether the trust has or has not been perfectly created, and for the perfect creation of the trust it is essential that there should have been an intention on the part of the settler of creating a trust, and a vesting of the property in the trustee, in such manner that the author of the trust loses all dominion over it, that is, puts it between his power of revocation.

Lewin on Trusts, p. 83.

Smith vs. Darby, 39 Md. 278.

Taylor vs. Henry, 48 Md. 550.

Young vs. Young, 80 N. Y. 422.

Milroy vs. Lord, 4 DeG. F. & J. 264.

Warriner vs. Rogers, L. R. 16, Eq. 340.

Beaver vs. Beaver, 117 N. Y. 421.

Unless, therefore, the proof in this case shows clearly and unmistakably both the intent, and the execution of that intent, in favor of these plaintiffs,

the trust asserted by them cannot be maintained. Ordinarily the declaration of a trust should come from him who is the author of it, and it is allowed also to come from the trustees, in two classes of cases. These are, first, where the author of the trust and the trustee are one and the same person, and the trustee and author, either in writing or orally, coupled with proper acts, declares himself to be the holder of property for specific trusts, and such property is then placed beyond his dominion over it, in any manner other or further than in the execution of the declared trusts; and secondly, as against a trustee to impress upon the property which is the subject matter of the trust, the fact that it is trust property, not what is the character of the trusts upon which it is held.

Now, looking to the facts of the present case, there appears, first, a declaration signed by Roop, and dated October 14th, 1884, which sets out that he has received from Samuel Engler certain specified bonds, to be held in trust for the children of S. P. and Mary E. Engler. The interest collected to be remitted to Samuel Engler. The above conditions to be observed and carried out until otherwise ordered and directed. But "ordered and directed" by whom? Manifestly not the trustee, and scarcely less manifestly not the cestui que trusts, for there is reserved to the supposed author of the trust the interest on the bonds which constituted its subject matter, and there is no suggestion or pretense that this interest was ever claimed by, or paid to, the children of S. P. and Mary E. Engler.

The power of changing the conditions, therefore, must have rested with Samuel Engler, the settler. Therefore, even if the declaration of the trustee be admitted as evidence to the full extent of everything that it contains, it discloses upon its face that a power, an unlimited power of the change of the conditions of the trust, (and included in any such power must, of course, have been the power to change the beneficiaries) was reserved in the author of the trust at the time of its creations. This was certainly very far from such parting with the dominion and control over the trust property as is necessary to effectuate a trust under the authorities above cited, unless

there is some evidence, oral or written, coming directly from the settler himself.

Roop, the trustee, is dead, and there is no evidence whatever to show the instruction which may have been given to him by Samuel Engler, nor is there any evidence to show that Samuel Engler ever saw or knew of the declaration of trust. In fact what evidence there is points directly to the contrary.

The declaration bears date in October, 1884, and while the exact date is not fixed, the paper appears to have been delivered at or about the time of its date, not to Samuel Engler and by him transferred to the supposed cestui que trust, but to have been given directly by Roop to the cestui que trust.

Nor can the fact that Roop caused the principal of the coupon bonds to be registered in his, Roop's, name operate to establish the severance of the dominion of Samuel Engler over the property, since there is no evidence that such action of the trustee was ever authorized by or known to Samuel Engler.

A number of letters have been filed on behalf of the plaintiff, the object and purpose of which is to show the intent of Samuel Engler to create a trust such as that set out in the declaration of Roop. The first of these letters is dated some ten months earlier than the declaration, and while it goes to show that Samuel Engler had created Roop trustee for certain purposes, it nowhere discloses what those purposes were. The second letter filed bears a date about four months subsequent to the declaration of trust, and while it recommends to Mrs. Mary E. Engler, to whom it was addressed, that she should invest "the income from the bonds," no bonds in particular are specified.

It is in evidence that at the time when this letter was written, or shortly before, she was the holder of certain other bonds to which the language of the letter might well apply, and there is an utter absence of any evidence to show that Mrs. Engler ever received a single dollar of interest from the Mobile and Ohio Railroad Company bonds, upon which this, the trust, is now sought to be impressed.

A letter of April 25th, 1888, is filed, but contains nothing directly bearing

upon the bonds in question, and the last letter, one of October 3rd, 1892, or eight years after the trust is claimed to have been created, contains the following language:

"David Roop has still in hand $3,500 of Mobile & Ohio Railroad 1st mortgage bonds.

These give $210 per year interest. This I must have until my death, after that the interest may be passed to you, but I must be assured that all is held safe for your life and that of your children.

How can you assure me? Promises alone would be about like those of Sol and your mother. Over $5,000 went to wreck by Roanoke R. Road."

This language is very far from showing that the bonds had, in the estimation of Samuel Engler, been placed beyond his dominion, or even an absolute intent for the creation of a trust for the children of Mary E. Engler, or if one had been created, that he had not, under the power reserved, modified its conditions, even to the extent of who the cestui que trusts should be. He says: "The interest *may* be passed to you, but I must be assured that all is held safe for your life and that of your children. How can you assure me? Promises alone would be about like those of Sol and your mother." Were any satisfactory assurances ever given? The proof discloses none, nor is there anything either in writing or even evidence of declarations by word of mouth to indicate that Samuel Engler, ever received the satisfactory assurances, which he was demanding in 1892, and under such circumstances, where the evidence is very far from being clear and unmistakable of the intent of the donor to make a declaration of trust in favor of the present plaintiffs and where the proof is entirely lacking that the property which was to be the subject matter of the trust, had been placed beyond his dominion and control, a court of equity will not interfere and effectuate a supposed intent by charging the bonds, or the fund arising from them, with a trust.

A decree will therefore be signed directing the payment of the costs of this proceeding out of the fund now subject to the order of the court, and the balance remaining thereafter to the executor of Samuel Engler.